## Ray v. Woodruff.

(Decided February 17, 1916.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Courts—Fiscal Courts—Courts of Record—Appropriation of Money.—Fiscal courts are courts of record as well as courts of limited jurisdiction and can only appropriate money for purposes authorized by law, and the order should show specifically what the appropriation was for.

2. Courts—Fiscal Courts—Recovery of Money Unlawfully Appropriated by.—If the fiscal court pays the claim of an officer or other person without authority of law, or appropriates money without such authority, the amount so paid may be recovered in a suit against the person or officer receiving it.

3. Officers—Can Only Receive Fees and Compensation Allowed by Law.—Under section 1749 of the Statutes no officer can receive or demand for his services any compensation not allowed by law,

or any fee for services when the law has not fixed the compensation, or fee for services not actually rendered.

4. Officers—Recovery of Public Money Unlawfully Paid to.—Where money illegally collected remains in the hands of the officer, it may be recovered from him, but if it has been paid over by him to the proper authorities as required by law, it cannot be recovered in a suit against him unless he had notice that he would bo called on to refund it before paying it over.

5. Courts—Fiscal Courts—Must Speak by Records—Explanation of Record.—The fiscal court must speak by its records, and its records cannot be contradicted or supplied by parol evidence. But where the record is ambiguous, parol evidence may be offered to explain its meaning.

6. Courts—Fiscal Courts—Unauthorized Allowance of Claim of County Clerk—Recovery of—Suit by a Taxpayer.—In a suit by a taxpayer money appropriated to pay claims presented by the county clerk may be recovered from the clerk if the appropriation was unauthorized.

7. Courts—Fiscal Courts—Necessity for Appropriation Will Not Justify It Unless Authorized by Statute.—When the statute provided for the appointment of a deputy clerk for the juvenile court, the fiscal court was not authorized to appoint and compensate two deputies, although the business of the court required the employment of two.

8. Courts—Fiscal Court—Collateral Attack on Orders of—Remedy.— When the fiscal court makes an authorized appropriation its right so to do cannot be questioned in a collateral proceeding; for example, in a suit against the person receiving the money the remedy is in a direct action against the fiscal court.

W. A. PERRY for appellant.

BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in part and reversing in part on both original and cross-appeals.

This is a suit by W. F. Woodruff, for himself and other taxpayers of Jefferson county, to recover from the appellant Ray, county clerk of Jefferson county, $1,415.35 alleged to have been wrongfully paid him as county clerk by the fiscal court of the county. The items constituting this total sum are made up of: (1) $490.00 paid in February, March, April, May and June, 1910, for "extra clerk and note clerk;" (2) $19.15 for incidentals; (3) $123.00 for postage stamps furnished the county board of tax supervisors; (4) $400.00 for attending meetings and keeping a record of the proceedings of

the fiscal court for two years at $200.00 per year; (5) $333.20 for work and expenses incidental to the collection of delinquent taxes growing out of the increase in valuation made by the State Board of Equalization on property in the county for the year 1910; (6) $50.00 paid for a deputy assigned to the juvenile court.

After the case had been prepared for hearing, there was a judgment against Ray for $123.00 on account of stamps furnished the board of tax supervisors; for $400.00 allowed him for attending meetings of and keeping a record of the proceedings of the fiscal court, and for $333.20 paid him for work and expenses incidental to the collection of the delinquent taxes. The recovery of $490.00 for "extra clerk and note clerk" for February, March, April, May, and June, 1910; for $19.15 for "incidentals," and $50.00, paid for a deputy assigned to the juvenile court, was denied and the petition as to these items dismissed. From the judgment against him Ray prosecuted this appeal, and from the judgment refusing to charge Ray with the items mentioned Woodruff appeals.

There is no difficulty about the law of this case. It has been settled by repeated decisions of this court that the fiscal court is a court of record as well as a court of limited jurisdiction, and can only appropriate money for purposes that it is authorized by law to make appropriations for. It has further been settled time and again that if the fiscal court pays the claim of an officer or other person without authority of law, or appropriates money without authority, the amount so paid may be recovered in a suit against the person or officer receiving it: Jefferson County v. Young, 120 Ky., 456; Fleming County Fiscal Court v. Howe, County Judge, 121 Ky., 478; Mitchell v. Henry County, 124 Ky., 833; McDonald v. Franklin County, 125 Ky., 205; Fiscal Court v. Pflanz, 127 Ky., 8; Jefferson County v. Peter, 127 Ky., 453; Frizzell v. Holmes, 131 Ky., 373; Thomas v. O'Brien, 138 Ky., 770; Hollis v. Weissinger, County Judge, 142 Ky., 129; Elliott v. Com., 144 Ky., 335; Flowers v. Logan County, 148 Ky., 822; Woodruff v. Shea, 152 Ky., 657; Hickman County v. Jackson, 153 Ky., 551. Many other cases in addition to these might be cited, but the ones referred to are more than sufficient to illustrate the uniform ruling of this court upon every phase of these questions that has come up.

It is also provided in section 1749 of the statutes that "No officer shall demand or receive for his services any other or greater fee than is allowed by law, or any fee for services rendered when the law has not fixed on a compensation therefor; nor any fee for services not actually rendered." Illustrative cases under this statute are: Wortham v. Grayson County Court, 13 Bush, 53; Morgantown Bank v. Johnson, 108 Ky., 507; Owen County v. Walker, 141 Ky., 516; Elliott v. Com., 144 Ky., 335.

The law of the case being thus so well settled, we will now take up the items for which a recovery against Ray was sought, and, treating each of them separately, determine the correctness of the ruling of the lower court.

The first item is $490.00 paid by the fiscal court to Ray in February, March, April, May and June, 1910; or $100.00 a month for four of the months and $90.00 for the other one, on account of "extra clerk and note clerk." These amounts were paid to Ray by the fiscal court as compensation for work done by his office under section 4051a of the statutes. This section provides, in substance, that each county clerk shall certify to the county assessor a statement of all liens for money due shown by conveyances in his office; and further provides that "for his services in making such statements, the clerk shall be paid a reasonable compensation by the fiscal court of the respective county." It is, therefore, clear that there was direct statutory authority for the payment of this sum to the county clerk, if it was paid for services rendered under this section of the statutes.

It appears that the order book of the fiscal court shows that these payments were made for "note clerk and extra clerk," and counsel for Woodruff insist that if the allowance was for services rendered under section 4051a, the order making the allowance should state specifically that it was for services performed under this statute, and that in as much as the order does not show this, it was inadmissible for Ray to prove by the clerk of the fiscal court what this allowance was for. The order book of the fiscal court should have shown specifically what this allowance was made for. The words "extra clerk and note clerk," nothing else being added, do not explain fully or indeed at all, what service was performed by this note clerk or this extra clerk; but the evidence shows beyond question that this service was rendered

under section 4051a, and in view of the fact that the entry on the records of the fiscal court fails to show what the charge was for or what service the extra clerk or the note clerk performed, we think that as the appropriation was authorized it was competent to supply this omission by the evidence of the clerk of the fiscal court. This evidence does not contradict the record. It merely explains an ambiguity in it. It does not take the place of the record or supply by parol the record, but merely makes plain what was intended by the brief record or minute made. Kozee v. Com., 139 Ky., 66.

In Grayson County v. Rogers, 122 S. W., 866, the court very properly held that the fiscal court must speak by its records and that its records connot be contradicted by parol evidence or an entire omission made in the record be supplied by parol evidence. To the same effect is Owen County v. Walker, 141 Ky., 516. And in Flowers v. Logan, 148 Ky., 822, it was said that where money is appropriated, the order making the appropriation must specify not only the amount thereof, but the purpose for which it is to be used.

The order of the fiscal court here in question did specify the amount appropriated and the purpose for which it was appropriated and it had power to appropriate money for clerks. The only defect is that it did not set out as fully as it should have done the purpose of the appropriation; and this specific purpose we think it was competent, under the facts stated, to supply by parol evidence. If, for example, the fiscal court, without specifying the road, should make an appropriation for road work which it was authorized to make, we think it might be shown by parol evidence on what road the appropriation was used. And so in this case, we think it was competent to show that the service performed by this note clerk or extra clerk was in the performance of duties authorized by the statute; and so the judgment of the lower court upon this item was correct.

The next item allowed by the fiscal court is $19.15 for "incidentals," as shown by the record of the fiscal court. It is shown but not with clearness or certainty by evidence for Ray that this charge was for expenses incurred in delivering ballots, cards of instructions to voters, ink and stencils for use at the regular election held in the county in 1910. Section 1540 of the statutes provides that the cost of all elections held in any county shall be allowed

by the fiscal court of the county. And when the clerk presents to the fiscal court an itemized account showing the expense he has incurred in an election, it is proper that an allowance to him should be made by the fiscal court for the expense actually incurred. And it may be conceded that this $19.15 was expended by Ray in the manner stated by him in connection with the election. But the record made by the fiscal court is too loose and indefinite to authorize the appropriation of this sum. The word "incidentals" does not convey any idea whatever of the purpose for which this appropriation was made, and the court has no jurisdiction to appropriate money for "incidentals."

It would be the same as if the word "incidentals" had been omitted and the records merely showed an appropriation of $19.15 without any explanation of the purpose of the appropriation; and under the rule laid down in Flowers v. Logan, *supra,* as well as in other cases, this would not be sufficient to authorize the payment of the money so appropriated. We therefore think the lower court erred in failing to charge Ray with this sum. Upon satisfactory proof of the expenditure of this sum by Ray in connection with the election the fiscal court may yet allow to him this amount.

The next item is $123.00 for postage stamps furnished the county board of tax supervisors. The records of the fiscal court show that this appropriation was made to compensate Ray for postage stamps furnished by him to the board of tax supervisors in Jefferson county in the years 1911 and 1912. It appears that it has been for many years the practice of the board of tax supervisors of Jefferson county to write a great many letters to taxpayers in reference to their assessment list or respecting their failure to return any assessment, and in correspondence of this nature the board of tax supervisors secured from Ray as county clerk the stamps. This seems to be a meritorious claim, but we do not find any statutory authority for its allowance, and therefore approve the ruling of the lower court requiring Ray to refund this appropriation.

The next item is the appropriation of $400.00 for clerical assistance to the fiscal court for two years at the rate of $200.00 per year. It appears that the fiscal court by an order made on June 7, 1910, allowed the county clerk $200.00 per annum for attending the meetings of the

court and taking the minutes of its business, and that the appropriation of this $400.00 was to compensate Ray for his services from June 7, 1910, to June 7, 1912. It is provided in section 1835 of the statutes that "the clerk of the county court of each county shall, by virtue of his office, be clerk of the fiscal court. He shall attend its sessions and keep a full and complete record of all its proceedings, with a proper index. For his services the fiscal court shall annually make him a reasonable allowance, to be paid out of the county levy." And it is conceded by counsel for Woodruff that if Ray, or one of his deputies, had attended the meetings of the fiscal court and kept the minutes, he would have been entitled to the compensation by the fiscal court. So that, as stated by counsel, it becomes merely a question of fact as to whether Ray did or did not perform the services for which this compensation was allowed.

It seems that on June 7, 1910, the fiscal court, as a part of the order allowing the clerk $200.00 a year, provided that "commencing June 1, 1910, $350.00 per month be allowed an auditor for keeping the accounts of the fiscal court, the accounts of the contractors on road work, and auditing all claims, etc., against the county." Under this order one John H. Shea was employed as auditor and continued as such until August, 1912; and it appears to be the contention of counsel for Woodruff that under this employment, which was held to be unauthorized in Woodruff v. Shea, 152 Ky., 657, Shea acted as clerk of the fiscal court and performed all the services that the statute provided should be rendered by the county clerk, and for this reason the services of the county clerk were not needed, and he did not render any service during the time charged for.

Upon the question as to whether Ray performed any service there is a sharp issue. Gertrude O'Hara, who was a clerk in Ray's office, testified that after each meeting of the fiscal court she spent two or three days each week writing up the minutes of the court and making copies of different reports for magistrates. That although a deputy in the office of Ray, she did this work under the immediate direction of Shea, who, it appears, kept the minutes of the meetings of the fiscal court, which were written up after each adjournment by her.

The order appointing Shea does not show that it was a part of his duties to record all of the proceedings of

the fiscal court as required by law, and as this duty was imposed on the county clerk and appears to have been at least partially performed by him, we think the allowance of $200.00 a year was reasonable for the service rendered by his deputy, Miss O'Hara, and therefore the court erred in charging Ray with this item.

But, aside from this, the fiscal court had statutory authority to appropriate the money for the purpose named, and as the appropriation was within its power and the order clearly shows the object of the appropriation, the discretion of the court in making it cannot be questioned in this collateral proceeding. Where the fiscal court acts within its discretion and within its authority, and the order making the appropriation shows that it was one authorized by law, its acts, like those of any other court, are conclusive unless assailed in a direct proceeding. The fiscal court is a court of record, and when it makes an authorized appropriation specifying the purpose, although the appropriation may seem too large, the person receiving it cannot, in a proceeding against him, be required to refund it. The remedy, if any, to prevent the expenditure of the money under the appropriation, lies in a suit against the fiscal court to restrain it from issuing an order for the payment of the appropriation.

The next item involved is an appropriation of $333.20 allowed to Ray for work and expenses incidental to the collection of delinquent taxes. The averments of the petition in respect to this matter are as follows: "That contrary to the statute in such cases made and provided, the fiscal court of Jefferson county allowed and paid to the defendant, Presley S. Ray, on the tenth day of May, 1911, $333.20, which they allowed and paid to him as compensation for additional work and expenses incidental to the collection of the increased State taxes for the year 1910 on the basis of the increased 12% valuation."

Plaintiff states that there is no warrant of law for the payment of the said $333.20 paid as aforesaid to the defendant and that the fiscal court of Jefferson county was without authority of law to pay said sum to the defendant and that the defendant had no right to receive same, and holds the said money of the county contrary to law and is indebted to the county in the said sum of $333.20, which was wrongfully allowed and paid to him by the fiscal court of Jefferson county."

To this paragraph a demurrer was filed and overruled, and Ray declining to answer, judgment went against him for $333.20. In asking a reversal on this item counsel for Ray insist that the paragraph quoted did not state a cause of action because it is not shown in the petition that he failed to pay this money over to the Auditor of Public Accounts, as required by section 1761 of the statutes. It is further said that an officer is presumed to have done his duty, and if he did perform his duty and pay this money into the State treasury, as required by statute, before suit was brought, he could not be required to refund the claim, although the appropriation may not have been authorized by law.

We think the paragraph stated a good cause of action, as there does not appear to be any statute authorizing the fiscal court to appropriate money for the service for which this appropriation was made, and so it was incumbent upon Ray if he desired to avoid the return of this money to set up the reasons why he should not be required to refund it. It is further fair to assume that this money was not turned into the State treasury under section 1761, or else Ray would have made this defense as he did in other paragraphs of his answer respecting other claims. So that the judgment against him on account of this item is correct.

The next and last appropriation assailed is an allowance of $50.00. For the month of July, 1912, the fiscal court appropriated $50.00 for the purpose of paying the compensation of an extra clerk assigned by Ray to the juvenile court. The law on this subject is contained in sub-section two of section 331e of the statute, reading:

"The clerk of the county court of each county shall, by virtue of his office, be clerk of 'the juvenile session of the county court,' and he may designate a deputy to act for him. He shall attend all sessions of said court and shall keep the books provided for in this section, and a full and complete record of all its proceedings, with a proper index. For his services the fiscal court shall annually make him a reasonable allowance, to be paid out of the county levy."

It will be noticed that this statute authorizes the clerk to designate a deputy to act as clerk of the juvenile court, and it seems that the fiscal court appropriated $100.00 a month for the payment of one deputy for this court. But it appearing that the business of this court

required the services of two deputies, this extra deputy was assigned to the court, and it is the compensation of $50.00 appropriated for his services that is drawn in question.

The business of the court may have increased to such an extent as to render necessary the employment and compensation of two deputies, but as the statute contemplates that only one deputy shall be assigned to this work, the fiscal court was without authority to appropriate money for the payment of two deputies; and the fact that two deputies were necessary cannot be allowed to evade the effect of this statute. It was said in Woodruff v. Shea, 152 Ky., 657, and is very pertinent here:

"It is undoubtedly true that the business of the county could be conducted with more system and with perhaps greater accuracy if the accounts were regularly audited and properly kept by an experienced accountant, such as appellee is known to be. But the desirability and necessity for the creation of such an office are matters which must be addressed to the legislative department of the government, and, until it acts and authorizes the appointment, the court is without power to make it. If it should be held that the court has power, in what it conceives to be the proper discharge of its duties and the safeguarding of the public interest, to appoint one auditor and one clerk, it is likewise in its discretion to appoint several, and the safeguard which is thrown around the people in the expenditure of the moneys collected would be entirely removed, and we would have substituted for the mandatory provision of the statute the discretionary power of the fiscal court, which would be, of course, as varied as courts are numerous, a condition which must at once be recognized as unsafe as the argument that such right now exists in the court is unsound."

We are, therefore, of the opinion that the lower court erred in refusing to require Ray to refund this $50.00 appropriation.

It is provided in section 1761 of the statutes that county clerks in certain counties, including Jefferson, shall, "on the first day of each month, severally, send to the Auditor of Public Accounts a statement, subscribed and sworn to by each of them, showing the amount of money received or collected by or for each of them the preceding month, as fees or compensation for official duties, and shall, with such statement, send to the Auditor the amount

so collected or received." This section, as well as sections 1762 and 1763, make provision for the number of deputies that may be appointed and their salaries; and section 1764 provides that: "The salary of each officer, his deputies and expenses of office, shall be paid monthly by the Treasurer of the State upon the warrant of the Auditor, made payable to the officer."

This section further limits the amount that may be paid for salaries and expenses to 75 per cent. of the amount paid in.

For defense to this suit Ray set up in his answer, and it is conceded to be true, that in accordance with this statute he paid to the State Auditor the $490.00 appropriated by the fiscal court for "extra clerk and note clerk," the $19.15 for "incidentals," the $400.00 for attending meetings and keeping a record of the proceedings of the fiscal court, and the $50.00 appropriated for the extra deputy in the juvenile court. On these facts the argument is made that as this suit to require Ray to return this money was not brought until after he had paid it to the State Auditor to go into the State treasury, he cannot be required to refund it. It is further said that this money was paid to him under at least color of authority, and believing in good faith that it was a part of the compensation to which he was entitled, it was turned over by him to the State Auditor to be placed in the State treasury; and that in cases like this the officer can only be required to refund the money when it is in his custody or possession when the suit to refund is brought, or when demand is made on him to refund or notice is given to him not to pay it over to the State. In other words, the contention is this: The statute required Ray as clerk to pay over to the State Auditor for the benefit of the State treasury each month all fees and compensation received by him during the preceding month in payment for official duties; and that after he has so paid this money in compliance with the statute, without notice that he would be called on to refund it, he cannot, in a suit like this, be required to refund it, although he might have been so required if the payment to the Auditor was made after he had notice that his right to the compensation would be called in question.

In Meacham on Public Officers, section 694, it is said: "Where money illegally collected by color of law still remains in the hands of the collector, it may be recovered

from him by the party paying it, but if it has been paid over by the collector to the proper authorities, he is no longer responsible for it, though it appears that he acted under an authority which was void."

And this text is supported by Crutchfield v. Wood, 16 Ala., 702; State v. Oden, 101 Tenn., 669; First National Bank v. Christian County, 32 Ky. L. R., 634; Dotson v. Fitzpatrick, 23 Ky. L. R., 2042.

But the principle announced in these authorities has little effect on the questions arising in this case, because under section 1764 of the statutes 75% of the money paid by Ray to the State Auditor was at once returned to Ray by the State Auditor for the purpose of defraying the salaries and expenses of his office. So that when this suit was brought 75% of the money sought to be recovered was in the possession of Ray.

The rule laid down in Meacham and the authorities cited applies to a state of case in which the officer has parted finally with the funds sought to be recovered. For example, if it were sought to recover from Ray money that he had paid to the State Auditor or into the State treasury, no part of which was to be returned to him, he could not be required to refund it in an action like this, if, under the direction of the statute, he had parted with the fund before notice that he would be called on to refund it. It can easily be seen that in such a state of case it would be unjust to the officer to require him to refund money which, under the direction of the statute, he had paid without notice that his collection of it was unlawful.

But in the case we have the situation is exactly the same as if 75% of this money had not been paid to the Auditor and was yet in the possession of Ray. To avoid any confusion it should further be said that this principle affects only the item of $19.15 for "incidentals" and that of $50.00 for juvenile court clerk, as these are the only items that should be charged against Ray among those paid to the State Auditor by him, and he should be required to refund only 75% of these two items.

The result of our conclusions is that Ray should be required to refund 75% of $19.15, appropriated for "incidentals," and 75% of $50.00 paid for his deputy assigned to the juvenile court, and the whole of $125.00 appropriated for postage stamps for the board of tax supervisors, and $333.20 for work and expenses incurred

in the collection of delinquent taxes; and that as to the other items sought to be recovered the petition should be dismissed.

Wherefore, the judgment on the original as well as cross-appeal is reversed in part and affirmed in part. Each party will pay one-half the cost of the appeal.