## Caldwell County v. Durret Construction Company.

(Decided May 17, 1918.)

### Appeal from Caldwell Circuit Court.

1. Counties—Appropriations—Discretion of Fiscal Court—Review.— Where a fiscal court has statutory authority to appropriate money for the purpose attempted, and the appropriation is within its power, and the order clearly shows the object of the appropriation, the discretion of the court in making it cannot be questioned in a collateral proceeding; it can only be reviewed by an appeal.

2. Counties—Appropriations—Discretion of Fiscal Court.—The rule that the discretion of the fiscal court in making an appropriation within its power can be reviewed only by an appeal to the circuit court does not apply to the action of a fiscal court in paying partial estimates upon the price of the construction of a public road under subsection 15 of section 4356X of the Kentucky Statutes; such orders not being final orders and partaking rather of the character of ministerial, than of judicial acts.

3. Counties—Construction of Road—Order Directing Payment— Surcharge of Order.—Where the fiscal court made partial payments for the construction of a road pursuant to estimates made as required by subsection 15 of section 4356X of the Kentucky Statutes, and no exceptions were taken to the order directing the payment by either of the parties or by a taxpayer, the order was only prima facie correct, and may be surcharged and falsified by an answer of the county to an action by the contractor to collect the balance due him under the contract for building the road.

4. Counties—Construction of Road—Contract for—Statute.—Under subsection 12, of section 4356X, of the Kentucky Statutes the county may retain 5 per centum of the contract price for building a public road for the period of one year from the completion of the work and its acceptance in writing by the commissioner of public roads; but if the commissioner of public roads refuses to accept the work and suit is brought by the contractor to collect what is due him under the contract, the court may

determine when the work was completed, if it was so completed, and the year will run from that date; and if the work was not so completed the court will enter a judgment to fit the facts and protect the rights of all parties, under the contract.

5.   Counties—Construction of Road—Suit by Contractor—Pleading.— In a suit by a contractor against the county to collect the balance claimed to be due him for constructing a public highway an answer and counter-claim which denied the allegations of the petition and charged fraud against the contractor in the performance of his work, specifying the acts of fraud, presented a defense to the action and a demurrer thereto should have been overruled.

6.   Pleading—Verification—Failure to Verify—Appeal and Error.— When the objection to the filing of a pleading is based upon its want of verification that fact should be made plain in the record; and, unless it appeared that the pleading was rejected for want of verification, the failure to verify will not, upon appeal, be treated as a sufficient ground for its rejection.

J. E. BAKER and R. W. LISANBY for appellant.

JOHN C. GATES, E. LEVI and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In 1915, the fiscal court of Caldwell county determined to construct so much of a turnpike road leading from Cadiz to Princeton as was located in Caldwell county, at an estimated expense of $6,250.00, one-half thereof to be paid by the State.

The contract for the construction of the road was awarded to the Durret Construction Company under the provisions of the act of 1914, commonly known as the State Aid Act, and constituting section 4356X of Carroll's Kentucky Statutes. The plans, profiles, and specifications for the improvement, and the contract with the Chicago Bonding & Surety Company as surety thereon, were submitted to and approved by the state commissioner of public roads as required by sections 10 and 11 of the statute, *supra*.

The contract provided that the contractor should be paid 80% of the contract price of his work as it progressed; and further that when the cost of the work which had been finished amounted to as much as $6,250.00, the sum available for road purposes, the work should cease. Pursuant to section 14 of the statute, the state road commissioner appointed Barnum Davis as

state road inspector to represent the state's interest in Caldwell county.

The Durret Construction Company began work on the road in October, 1915, and continued the work, with some intermissions during the winter, until June, 1916, when it ceased work, claiming it had completed its contract. On November 24, 1915, pursuant to section 15 of the statute, the state road inspector and the county road engineer certified to the fiscal court, in writing, that the construction company had performed certain portions of its work under its contract, and that there was then due it for said work the aggregate sum of $2,695.48, of which 20% ($539.09) should be retained under the terms of the contract.

Again, on December 29, 1915, a similar certificate was issued to the court showing the contractor had further performed work of the aggregate value of $1,475.25, of which 20% ($295.05) should be retained. The fiscal court paid these two estimates; but the record fails to show what orders were entered upon its records, if any, in that connection. At that time the contractor had about finished the excavation and grading work, and was proceeding with the work of macadamizing the road by putting on the rock, rolling it, etc.

The construction company proceeded with the work of surfacing the road until sometime in June, 1916, when it claims it had done work of the value of $2,003.32, in addition to that embraced in the two estimates above referred to; and as these three items consumed the $6,250.00 which had been appropriated for this purpose the company ceased work. Up to this time there had been no dispute between the county and the contractor as to the amount of work done, or the amount of money due therefor; but when the contractor ceased work in June, 1916, claiming it had finished its work, the county contended that it had not completed its contract, and refused to pay the construction company for the work it had done in the spring of 1916; and, it further claimed that the construction company had not performed the amount of work which it claimed it had done under the first two estimates furnished in November and December, 1915.

The state inspector and the county road engineer refused to certify to the amount of work claimed to have been performed by the contractor in the spring of 1916.

The fiscal court entered an order reciting the fact that the construction company had not completed its contract and calling upon it to return and complete it; and a copy of this order was served upon the construction company and its surety.

The county filed an answer and counter-claim traversing the allegations of the petition as to the completion of the work as required by the contract; made it a cross-petition against the Chicago Bonding & Surety Company; and asked a judgment against the construction company and its surety for $2,540.00, in damages. By an amendment the allegations of this pleading were made more specific. The circuit court, at first, overruled demurrers to the answer, counter-claim and cross-petition; but, upon the demurrers being renewed, the court sustained them.

By a second amended answer, counter-claim, and cross-petition tendered by the county on June 4th, 1917, it charged that the construction company had practiced fraud upon it in constructing the highway, and that the indebtedness created by the contract exceeded the county's revenue for that year. The court refused to permit the amendment to be filed, dismissed the counter-claim and cross-petition, and entered judgment against the county for the sum of $2,837.45, prayed for.

As grounds for a reversal appellant insists: (1) that a judgment should not have been entered for the full amount found to be due to the contractor, because under the contract, 5% thereof ($321.50) would not be due until one year after the approval of the work by the state road commissioner as provided by subsection 12 of section 4356X, of the Kentucky Statutes, and by the terms of the contract; (2) that the court erred in sustaining the demurrer to the counter-claim which stated a cause of action for damages for the improper construction of the road; (3) that the court erred in sustaining the demurrer to the answer which traversed the plaintiff's claim for work done under the contract; and, (4) that the court erred in refusing to permit it to file its amended answer and counter-claim charging fraud against the construction company.

Subsections 12 and 15 of section 4356X of the Kentucky Statutes, read as follows:

"12. The time and manner of payment for work done under any contract awarded under this act shall be

set forth in said contract, and at least five per centum of the contract price shall not be paid to the contractor until after the expiration of one year from the completion of the work and acceptance thereof in writing by the commissioner of public roads.''

''15. Where any contract provides for partial payment based upon the amount of work done, it shall be the duty of the inspector as each payment becomes due to present to the fiscal court a certificate signed by such inspector and the county road engineer, in which certificate shall be stated as nearly as can be the amount of work done for which payment is to be made and that the same has been done in all respects in strict compliance with the contract, plans and specifications. When the work under contract shall have been fully completed the inspector and county road engineer shall prepare a detailed and itemized statement in quadruplicate of the cost of the improvement, certifying the same, one copy of which shall be filed with the fiscal court of the county, one with the county road engineer and two with the state commissioner of public roads.''

1. Preliminary, however, to a discussion of the questions raised by the appellant, the appellee insists that the circuit court was without jurisdiction to review the questions raised concerning the correctness of the estimates covered by the two partial payments made by the fiscal court in November and December, 1915, respectively, and that the propriety of those payments could only have been raised by an appeal from the action of the fiscal court ordering their payment. This contention is based upon the well-established rule that where the fiscal court has statutory authority to appropriate money for the purpose attempted, and the appropriation is within its power, and the order clearly shows the object of the appropriation, the discretion of the court in making it cannot be questioned in a collateral proceeding; it can only be reviewed by an appeal. Elliott v. Commonwealth, 144 Ky. 335; Hickman County v. Richmond, 148 Ky. 849; Ray v. Woodruff, 168 Ky. 563, 570; Mills v. Lantrip, 170 Ky. 83. This rule, however, has its limitations, one of them being that the order must be a final order before it can be treated as conclusive between the parties.

Section 978 of the Kentucky Statutes provides that, ''appeals may be taken to the circuit court from all

orders and judgments of the fiscal court or quarterly court in civil cases where the value in controversy, exclusive of interest and costs is over $25.00.''

It has repeatedly been held by this court that when exceptions have been filed in the county court to a settlement, and an order is made overruling or sustaining them, the ruling can be reviewed only by an appeal to the circuit court; but where no exceptions are filed, the settlement is only *prima facie* correct and errors therein may be corrected by a bill in chancery. Scott's Hrs. v. Kennedy's Exr., 12 B. M. 515; Turley's Admr. v. Barnes, 103 Ky. 127. And, in Stanberry's Admr. v. Robinson, 16 Ky. L. R. 309, 27 S. W. 973, the rule was extended to cases wherein partial settlements had been made by an administrator and a final settlement was subsequently made. In cases of that character it was held that an appeal might be taken from the final settlement in which the partial settlements had been incorporated and reviewed. In other words, an order made in a county court confirming a report when no exceptions had been filed thereto, or where partial settlements have been made by an administrator to which no exception was taken, were not final orders which would prevent a correction of the settlements by a bill in chancery. Such orders are only *prima facie* correct. The reason for the rule is stated in Scott's Hrs. v. Kennedy's Exr., *supra*, as follows:

''But we are of opinion, that the order of the county court confirming a settlement, without exceptions, in a case in which it has jurisdiction is not such a final judgment or order as is the proper subject of a writ of error, or of revision and reversal by this court on any ground. Because, 1. There is in such a case, no judicial contest, and no judicial decision, but the order of confirmation partakes rather of the character of a ministerial than of a judicial act. 2. There is no final adjudication or determination in favor of one person, or against another, or upon any question of property or of personal rights. 3. The settlement and its confirmation are not conclusive either upon the parties who may have been interested in opposing them, or upon the court itself, which may order another settlement in which errors in the first may be corrected. 4. They are not conclusive in any other court, but are only *prima facie* evidence, subject to be surcharged and falsified, and they operate

rather as means of preserving evidence, to the preservation of which executors and other fiduciaries are entitled, than as judgments. And being made by sworn officers under the supervision of a court they ought to have, and have always had, the effect of *prima facie* evidence, whether made *ex parte* or not.''

This language is quoted with approval in Turley's Admr. v. Barnes, 103 Ky. 131, where it was further said:

''While we think it clear that if a party in interest shall file written exceptions to a settlement made by a fiduciary, and these exceptions are regularly tried by the county court upon their merits and a judgment entered sustaining or overruling them, the proper remedy to a party who feels aggrieved is by appeal as provided in section 978; yet we do not think that the effect of that statute is to take away from parties who do not file such exceptions or in any way contest in the county court the validity of charges complained of, the right to have such alleged errors reviewed, by a bill in chancery.''

Again, in Caplinger v. Pritchard, 136 Ky. 353, where exceptions filed to a county court settlement by an administrator were not considered by the county court, this court reaffirmed the rule above announced, saying:

''If, however, appellee as administrator still owes the estate on a fair settlement of his accounts, the parties in interest are not without a remedy. An action may be instituted in equity in the circuit court surcharging his settlements, and force him to account for what he owes the estate. The proceedings had in the county and circuit courts are not a bar to such an action, as the issues therein were not tried upon their merits, or at all, as expressly shown by the orders of the county and circuit courts. The rule is well established that when a settlement of a fiduciary is contested in the county court, and that court tries the exceptions on their merits, the remedy of the aggrieved party is by appeal, but not so when there is no trial, and his exceptions are dismissed without a hearing in the case at bar.''

See also Davis v. Commonwealth, 139 Ky. 334, and Commonwealth v. Scarborough, 148 Ky. 561, to the same effect.

We are of opinion, therefore, that the rule above announced should be applied in cases of this character

since the orders of the fiscal court in paying the two partial estimates for work upon the road were from their very nature, more ministerial than judicial. No exceptions were taken to them by either party, or by a taxpayer. They contain no final adjudication or determination in favor of the construction company, or against the county. On the contrary subsection 15 of the statute, as well as the contract under which the work was done, clearly contemplate that the certificates of the inspector and road engineer are only the usual tentative statements made for the purpose of paying the contractor a part of what is due him as the work proceeds, and to safeguard the county against overpayment.

That they were in no sense final orders or judgments, clearly appears from the terms of the statute which provides that the certificate shall state "as nearly as can be the amount of work done for which payment is to be made," and that "when the work under contract shall have been fully completed the state inspector and county road engineer shall prepare a detailed and itemized statement of the cost of the improvement." We think it is clear, therefore, that the orders of the fiscal court directing the payment of the two partial estimates were not final orders from which appeals should have been taken, and that these statements can be corrected by a cross bill in this action by the contractor to collect the balance which he claims is due him.

2. The principle contended for by appellant that the judgment should not have carried the full amount due the contractor, but that 5% should have been retained for a period of one year, is sound. Following the requirements of section 12 of the statute, *supra*, the contract provides that at least 5% of the price of the work shall not be paid to the contractor until after the expiration of one year from the completion of the work and the acceptance thereof in writing by the commissioner of public roads.

The purpose of retaining this percentage of the price is to reimburse the county for any hidden defects that might develop within a year after the road was completed. It is evident, however, that the express terms of the statute cannot be applied in this case since the commissioner of public roads has never accepted the work, and probably will never do so. On the contrary

his refusal to accept the work led to this suit in which the contractor seeks to require the county to pay for the work notwithstanding the failure to accept. It calls upon the court to inspect and accept the work, and by its judgment to declare that it has been performed according to the contract. This it has the right to do, since the court is the constituted arbiter between persons who disagree. If, therefore, it should appear that the contractor has completed his work according to the contract, the judgment of the court determining that fact and the date of its completion, will fix the beginning date of the period of one year during which the 5% may be retained by the county. On the contrary, if the finding should be against the contractor upon the issue of the completion of the work, the chancellor will enter a judgment to fit the case thus ascertained, properly guarding the rights of all parties, under the contract.

3. The sufficiency of the answer and counter-claim as originally amended will be considered briefly. The first paragraph of the answer is a traverse of the principal allegations of the petition; while the second paragraph sets up the provisions of the contract, permitting the defendant to retain 5% of the contract price for its protection. This question has heretofore been disposed of and needs no further consideration.

The third paragraph is a counter-claim for damages aggregating $2,540.00, caused by the contractor's failure to construct the road according to the plans and specifications; using defective material; failing to make a proper grading of the road; using property that belonged to the county without paying therefor; destroying ditches that had theretofore been constructed by the county; and for its failure to complete the work within the time prescribed by the contract.

The first amended answer and cross-petition makes the original pleading more specific by charging that the contractor instead of making 12,625 cubic yards of earth excavation, had made only 5,615 cubic yards; and, that instead of the county owing the contractor the sum of $3,257.94, which it paid for excavations, it really owed the contractor only $1,460.13. The amendment goes into detail as to the macadam work upon the road and other work, showing with precission the sums which the county asserts it paid in excess of what it should have paid, specifically attacking the estimates of November and

December, 1915, under which the contractor collected the sums of money above indicated.

In addition the answer challenges the correctness of the final unpaid claim of the contractor for $2,003.31 for work done in the spring of 1916, and for which no certificate was ever issued. It will be remembered that this item constitutes the principal portion of the claim which is the basis of this action, and that it was never certified by the road inspector, or paid by the county. Under these circumstances it would seem to be so clearly open to investigation as to need little or no argument in support of the proposition.

In our opinion the demurrer to the answer and counter-claim as originally amended was properly overruled and that the circuit court erred in reversing that ruling upon the renewal of the demurrers.

4.  On June 4, 1917, defendant tendered a second amended answer, counter-claim and cross-petition charging fraud against the contractor in the construction of the road and in collecting the partial payments therefor, specifying in detail the acts constituting the alleged fraud. There could have been no reasonable objection to the pleading for the want of substance, and the circuit court refused to permit it to be filed seemingly for the reason that it came too late. It was, however, tendered on June 4th, and the motion to file it was not overruled until June 7th. Thereafter, on the same day, the plaintiff filed a demurrer to the first amended answer and a reply to the original answer and counter-claim, and the court immediately sustained the demurrer, and entered judgment for the plaintiff. In this the court abused its discretion. If June 7th, was not too late to file pleadings, June 4th, was not.

5.  We are advised by the briefs that the court also rested its ruling, in this respect, upon the ground that the tendered pleading presented a new defense and was not verified, although the record does not show that the pleading was rejected for that reason, or for what reason it was rejected.

Section 139 of the Civil Code of Practice reads as follows:

"Courts may, in their discretion, permit the amendments authorized by this chapter to be made without being verified, unless a new and distinct cause of action or defense be thereby introduced."

Where the objection to the filing of a pleading is based upon its want of verification, that fact should be made plain in the record; and, unless it does appear that the pleading was rejected for want of verification, the failure to verify will not, upon appeal, be treated as a sufficient ground for its rejection. Lebus v. Poindexter, 18 Ky. L. R. 740, 38 S. W. 9.

Judgment reversed and action remanded for further proceedings not inconsistent with this opinion.