## Commonwealth ex rel. v. Fayette County.

(Decided June 9, 1931.)

GEORGE W. VAUGHN for appellant.

CHESTER D. ADAMS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

The fiscal court of Fayette county duly and regularly entered an order on its records appropriating out of the general fund in the county treasury $10,000 "for the purpose of purchasing and operating a fire truck, the amount to be paid out of a subdivision of the general fund known as 'Miscellaneous Budget,'" and also another order appointing a committee to expend the appropriation for that purpose. The county attorney, conceiving that the fiscal court was without authority to make the appropriation for that purpose, prosecuted an appeal from both orders to the Fayette circuit court and the parties filed therein an agreed stipulation of facts. Later the litigated question was submitted to that court for final adjudication, and it concluded that the fiscal

court of the county had the authority to do what it had undertaken and, being so convinced, it dismissed the appeals taken by the county attorney, and from that judgment the latter, for and on behalf of the county, prosecutes this appeal.

Before addressing ourselves to the merits of the case it should be stated that in the agreed stipulation of facts, and elsewhere in the record, it is made to appear that an agreement had been made between the county and the city of Lexington whereby the latter would store and house the fire truck after purchased by the county, and also man it with regular firemen of the city when used in extinguishing fires in the public buildings within the county, and in consideration therefor the city had the right to use the truck in extinguishing a fire within the city when needed to augment the fire extinguishing apparatus possessed and owned by it.

Counsel for each side of the controversy confine their arguments to the interpretation that they respectively put upon section 1840 of our present Statutes, and which has been a part of the statutory law of this commonwealth in practically the same language that it now is for a great number of years. It is one which, in quite general terms defines the powers and authority of fiscal courts in this commonwealth, and has been so often referred to and so many times inserted in opinions of this court that we deem it unnecessary to again do so in this opinion. By it the fiscal court is given express power and authority to employ the public funds of the county, "to erect and keep in repair necessary public buildings, . . . to regulate and control the fiscal affairs and property of the county, . . . to make provisions for the maintenance of the poor and provide a poor house and farm . . . and provide a hospital for said purpose, . . . to make provision to secure immigration into the county, and to advertise the resources of the county, and to appropriate county funds for the benefit of colleges and for infirmaries for the sick located in the county." In the place of the asterisks other authority is therein given in general language.

Whatever additional authority that may be conferred upon the fiscal court by other statutes, if any, is not relevant or pertinent in this case, since the authority to do the thing complained of in this case, if it exists at all, is to be derived from an interpretation, favorable thereto, of the section of the statutes referred to, and

which attorneys for both appellant and appellee in this case concede to be true. That being so, we should first examine into the general power and authority of counties into which the states are divided, and the limitations of their managing boards to appropriate the public funds of the county, collected by taxation, for the purpose of discharging its governmental functions as a local governmental and political subdivision of the state.

From the time "whereof the memory of man runneth not to the contrary," when counties were first created, courts have announced, in substance, the same as is the text in 15 C. J. 419, sec. 51, saying: "As a county is a quasi corporation and a governmental agency of the state, with no independent sovereignty, it possesses only such powers as are expressly given, or necessarily implied, in statutes constitutionally enacted." In defining the implied power and authority that a county, or its managing board, may exercise within such limitations courts generally, so far as we are aware, act cautiously and hesitate to grant or approve it, unless the implied power and authority is found to be a clearly necessary means for and reasonably adapted to, the exercise, execution, and carrying out of the express authority conferred by the state (either through its Constitution or its statutes) in which the county is located. Our statute, we repeat, from which the implied authority here involved must emanate is section 1840 supra of Carroll's Kentucky Statutes and which we will later refer to and discuss. Again it is said in the same volume of Corpus Juris, 457, sec. 103, that:

"It is well settled that a county board possesses and can exercise such powers, and such powers only, as are expressly conferred on it by the constitution and the statutes of the state, or such powers as arise by necessary implication from those expressly granted or such as are requisite to the performance of the duties which are imposed on it by law. It must necessarily possess an authority commensurate with its public trusts and duties. Therefore *it possesses inherent authority to perform acts to preserve or to benefit the corporate property of the county intrusted to it.*" (Our emphasis.)

Further along in the same volume, on page 533, sec. 218, the writer of the text treats of the powers and authority of counties, through their managing boards,

to construct, maintain and repair public buildings within the jurisdiction of the county, and in which this is said: "The authority to provide, construct, to improve, to maintain, and to repair court houses, jails, and other public county buildings is usually vested in the county board of commissioners in each county," etc. The text then proceeds to announce that such expressly conferred duties and authorities are to be performed and exercised within, the sound discretion of the particular board officer, or agency whose duty under the law it is to perform them "and their decision is final in the absence of an abuse of discretion amounting to fraud," provided, of course, the particular thing done, if not expressly authorized by statute, is necessarily implied in order to carry out that which has been expressly conferred. The inserted text is but a repetition of what may be found on the same subject by all text-writers, and is also a general statement of the conclusions adopted by all courts when dealing with the question, and for which reason it will not be necessary to encumber this opinion with reference to other texts, or opinions of other jurisdictions. Some of the numerous cases from this court recognizing appropriating, and applying the general statements of the inserted text, are: Crick v. Rash, 190 Ky. 820, 229 S. W. 63; Mills v. Lantrip, 170 Ky. 81, 185 S. W. 514; Russell County v. Hill, 164 Ky. 360, 175 S. W. 988; Taylor v. Riney, 156 Ky. 393, 161 S. W. 203; Woodruff v. Shea, 152 Ky. 657, 153 S. W. 1005; Breathitt County v. Hammonds, 150 Ky. 502, 150 S. W. 621, 42 L. R. A. (N. S.) 836, Ann. Cas. 1914D, 514; American Car & Foundry Co. v. Johnson County, 147 Ky. 69, 143 S. W. 773; Hollis v. Weissinger, 142 Ky. 129, 134 S. W. 176; Jefferson County v. Young, 120 Ky. 456, 86 S. W. 985, 27 Ky. Law Rep. 849; Allin v. Mercer County, 174 Ky. 566, 192 S. W. 638; Simons v. Gregory, 120 Ky. 123, 85 S. W. 751, 27 Ky. Law Rep. 509; Jefferson County v. Jefferson County Fiscal Court, 161 Ky. 538, 170 S. W. 1171; Cain v. Burroughs Adding Machine Co., 180 Ky. 567, 203 S. W. 315, and many others that may be found cited in the opinions in those cases.

Whether the particular questioned implied authority may be drawn from that which is expressly given and, therefore, may properly be exercised within the limitations, supra, is a question for the determination of the court from the facts and the language of the statute under consideration in each particular case, and it is to

be so determined in the exercise of the court's sound discretion, and which is to be measured by a consideration of whether the particular impiled authority is or not one having a logical and reasonable tendency toward the accomplishment of expressly conferred powers and authorities on counties and their managing boards. If the authority attempted to be exercised, though not expressly given by statutory or constitutional provisions, is one which under the prevailing conditions at the time it is proposed to be exercised, may be employed by the one whose duty it is to carry out the expressly conferred authority in the exercise of a sound discretion as a means of executing that authority, then the attempted action will be approved and upheld; otherwise it will be disapproved and the right to so proceed will be denied. Hence, in some of the cases cited, supra, the particular thing proposed to be done was disapproved while in others it was approved, and the conclusion in each case was arrived at because the court in determining the matter was convinced that under the conditions and in the circumstances the thing proposed to be done, and which formed the subject-matter of the legal contest, was or was not reasonably necessary for carrying out, performing, and executing the express power and authority conferred upon counties and their fiscal courts.

Under such circumstances it could, therefore, serve no useful purpose to analyze each particular case arising in this court, or to point out the reason why the involved authority was upheld in some of them and denied in others.

Of course, if the questioned action has no direct tendency toward substantial contribution to the accomplishment of an express authority given to the fiscal court, but does so, if at all, only indirectly and remotely, then it could not be said to be necessarily implied from the given express authority. But, where the contemplated act (which may be performed only from necessarily implied authority from that which is given) is one reasonably and logically adapted and appropriate for the accomplishment of the expressly given authority, and one employed to offectuate the same purpose by prudent business men in private affairs and from which it may fairly be said that the implied authority exists, then it is the duty of courts in the exercise of their judicial discretion to so declare.

With so much as a premise we will now proceed to determine whether the implied authority here drawn in question may be deduced from the express authority conferred on counties by section 1840 supra of our Statutes. It will be noted that the county has the right under that section to build, repair, and keep in repair, public buildings and which duty to repair and keep in repair is tantamount to, and is in substance the same as, keeping the building in a state of preservation, and from which it necessarily follows that the county through its proper managing board (which in this state is the fiscal court) may necessarily perform and pay for such acts as in their essence and purpose look to the continued preservation of the public buildings in the county intact, so that they might be maintained in their present condition, or so that if they should be destroyed (pro tanto or completely) the county would receive compensation, total or partial, for the loss produced by the destroying agency. It is the common experience of mankind that fire is a very destructive agency of the material of which buildings must be and are constructed. Hence, we conclude that no one would question the right of a county, or other governmental agency, to insure public property within its geographical confines against damage, loss or destruction by fire, and which is and has been the universal practice by all of the counties in this commonwealth, and we suppose in other states also, from time immemorial, and no one, so far as we are aware, has ever questioned the right of the county authorities to do so. But, it is a matter of equality universal information that, in the interest of economy in the saving of premiums, neither private nor public property is always insured to the full extent of its value; nor is it possible to procure insurance to the full extent of the service, or reference value of public records, if, indeed, such value could be measured in money and, therefore, the county, notwithstanding it may purchase some insurance against fire, is also itself carrying the risk of tremendous losses to it and the public over and above the amount of insurance it may procure. Therefore, it becomes essential to the maintenance and preservation intact of public buildings, and of their valuable records, to provide for and employ the means which science and experience have demonstrated are more or less effectual in the extinguishment of fires after they have started. It is, therefore, difficult to see why expenses incurred by the county in providing

such reasonably proven and adapted means for the extinguishment of fires that may break out in public buildings, and which would probably destroy them and their contents but for the provided extinguishing means. Both common sense and universal business methods dictate such a course in private affairs, and we are unable to detect any reason why such a universally adopted course in private affairs may not be also employed by a county and its fiscal court.

Indeed, no county public building in these modern times could be regarded as properly equipped unless its installation included, as appurtenant thereto, the latest approved scientific devices and equipage for first aid efforts in extinguishing a fire that might originate therein, and we are thoroughly convinced that a fiscal court possesses implied authority to make and pay for such installations out of the county treasury. If that be true, and concerning which we entertain no doubt, it seems to us that implied authority in the fiscal court exists to provide external and movable equipment for the extinguishment of fires, and which by analogy is the same authority as exists for the equipment of the building with fire extinguishing devices as hereinbefore referred to.

It is shown by the agreed stipulation of facts that there are public buildings within Fayette county outside of the corporate limits of the city of Lexington, the value of which in the aggregate amount to several hundred thousands of dollars, to say nothing about densely built-up communities through which a fire might be communicated to some of the surrounded public buildings of the county. A number of such public buildings contain helpless inmates who are wards of the public and whose care, treatment, and maintenance is expressly imposed upon the county by the section of the statute, supra. In their helpless condition, and in taking care of and treating and maintaining them, it is difficult for us to perceive why the county might not provide means to protect them against personal injury or loss of life from the ravages of a fire. Likewise, many school children occupy public county buildings, which are likely to become ignited, followed by the destruction of the building and possible loss of lives, or the sustaining of personal injuries; when, with modern roads and the employment of modern motor power, the fire might have been extinguished and such consequences avoided. It should be borne in mind that

the question here involved is one relating exclusively to the power and authority of a fiscal court in the performance of the duties expressly conferred upon it as such by the section of the statute discussed, and does not involve its authority to expend county funds in aiding and assisting county officers in more expeditiously performing their official duties, as was true in some of the cases supra.

We conclude, therefore, that under the facts of this case the purpose intended to be accomplished by the appropriation in question is one within the necessarily "implied authority" deducible from that expressly given to the fiscal court of Fayette county by section 1840, supra, of our Statutes, in order to preserve, protect, and maintain the public buildings in the county, and to guard and protect the personal safety of the inmate wards who occupy some of them.

Having so concluded, the judgment is affirmed.

Whole court sitting.