## Jefferson County Fiscal Court et al. v. Jefferson County ex rel. Grauman, County Attorney, et al.

April 28, 1939.

EDWIN C. WILLIS for appellants.

LAWRENCE S. GRAUMAN and ROBERT L. SLOSS for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Pursuant to Public Act No. 738, passed by the 74th Congress of the United States, 49 Stat. 1570, 33 U. S. C. A., Section 701a et seq., the engineering division of the Department of War has prepared proposed plans for the erection of a flood wall on the south side of the Ohio River, and around the City of Louisville.

The proposed wall will be approximately seventeen miles in length, beginning at a point above and terminating at a point some distance below the city, with four miles of the proposed wall within the county limits, but outside the limits of the city. The matter before us is in respect of that portion outside the city.

In the Act above referred to it is specifically provided that no part of the grant for the building of the wall "shall be expended on * * * any project until States, political subdivisions thereof, or other responsible local agencies have given assurances to the Secretary of War that they will (a) provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project." Section 3, 33 U. S. C. A., Section 701c.

The fiscal court upon being advised of preliminary surveys and considering that the erection of the proposed project would be of inestimable value to the residents of Jefferson County, on March 9, 1939, resolved that it would undertake the procurement of the rights-of-way in the county, and appropriated from the contingent appropriation budget fund the sum of $500, to be expended in obtaining options for the necessary rights-of-way, so that the Secretary of War might be assured of the county's compliance with the conditions of Section 3 of the Act.

At this point it might be well to say that this appropriation is but a stepping stone, since it is made clear that if this appropriation is legal it would follow that an appropriation by the fiscal court for the purchase of the rights-of-way would also be legal. It is developed that it will cost from ninety to one hundred thousand dollars for the procurement of the necessary county rights-of-way.

Following the adoption and entry of the order, and within the time fixed by law, the county attorney prosecuted an appeal in his own behalf and in behalf of Jefferson County, in which he took the position that the fiscal court was without power to expend or appropriate

any sum of money for the purposes set forth in the resolution. His appeal and petition was presented in the form of a request for declaration of rights, and follows the provisions of Section 639a—1 et seq., Civil Code of Practice, and in which the appellant here joined by way of answer.

The question propounded to the court was whether or not the fiscal court was authorized under relative statutes, to make the appropriation, the defendants below claiming and insisting that such statutes as relate to the building of roads and bridges, their maintenance, and for the protection of lands, should be so construed as to authorize the erection of the proposed flood wall. Appellants and petitioner below take an opposite position.

Upon submission the chancellor concluded that "a county has no authority to build a levee unless it be found in Kentucky Statutes, Section 1840, relating to bridges and *other structures*. I think the rule of ejusdem generis excludes levees from its provisions. Kentucky Statutes, Section 938a-1, gives the county judge broad powers 'to aid in the construction of levees as herein provided.' Hence the levee district, and not the county, is in my opinion the exclusive Kentucky agency to initiate levee projects." He then adjudged that the fiscal court was without power to make the appropriation. From this declaration and annulment of the order of March 9, the appeal is prosecuted.

Both parties fully agree on one proposition, that since the disastrous experiences resulting from the 1937 flood, the building of a flood wall is of prime necessity and great economic value to the citizens and residents of Jefferson County. The court takes judicial knowledge of the human suffering and destruction of property during the flood of the early part of that year, and fully agrees with the conclusions of parties, but the question is whether or not the initial movement looking to a method of preventing a recurrence is justified by statutory law, or any inherent power of a court whose functions generally are controlled by statutory provisions.

Counsel for appellant relies on the language of Section 1840, Kentucky Statutes, which delegates appropriating power to the fiscal court. So much of the section as pertains, reads as follows:

"The fiscal court shall have jurisdiction to appro-

priate county funds authorized by law to be appropriated; to erect and keep in repair necessary public buildings * * * to erect and keep in repair bridges and other structures and superintend the same.''

At the outset we may say that we have uniformly given the strictest construction to such statutes as authorize the fiscal court, or other municipal bodies to expend funds raised by taxation, holding that the authority must be clear and convincing before we will uphold an expending or appropriating order or resolution. Jefferson County ex rel. Grauman v. Jefferson County Fiscal Court, 274 Ky. 91, 118 S. W. (2d) 181; Ray v. Woodruff, 168 Ky. 563, 182 S. W. 662; Taylor v. Scoville, 252 Ky. 809, 68 S. W. (2d) 423; Com. v. Nunnelley, 211 Ky. 409, 277 S. W. 506; Bruner v. Jefferson County Fiscal Court, 239 Ky. 613, 40 S. W. (2d) 271, and cases cited in 5 Kentucky Digest, Counties, page 671.

Appellants concede that they have been unable to find any case which would authorize this court to hold that the words used in the statute, supra, are of themselves of such broad meaning as to include a flood wall, which after all is to all intents and purposes a levee, an "embankment to prevent the overflow of rivers." 2 Bou. Law Dict., Rawles Third Revision, page 1937. They do contend that by the application of the ejusdem generis rule, such structures might well be brought within the meaning of "bridges"; that bridges keep the traveler out of the water, and a flood wall will serve to keep the water from injuring the traveler, and from molesting and destroying property and human lives. It is argued that other statutes give the authority to the fiscal court to provide rights-of-way for roads, and for their upkeep and maintenance, and roads and bridges are considered as like structures and come within the ejusdem generis rule, all of which is perhaps true.

It is said that it cannot be conceived that "other structures" as used in the statute, should not come within the rule, unless it be said the words had reference to culverts; that the latter should not be dignified by placing them in the same category with bridges, and thus held to be similar structures. Whether viaducts would come within the meaning of bridges we need not discuss. Neither the court nor counsel overlooked Sections 938a-1 to 938a-13, Kentucky Statutes, which provide a specific

method of building and maintaining levees. Counsel placing reliance on his construction of Section 1840, Kentucky Statutes, says that the levee law presents an alternative method of protecting lives and property from the ravages of flood waters. We cannot agree to this conclusion.

On the other hand, it strikes the court that it provides the sole method, and this conclusion, to some extent, brings us to the belief that the doctrine of ejusdem generis cannot well be applied so as to bring flood walls within the purview of Section 1840. Its presence strongly militates against the theory that the legislature by the use of the words "other structures" intended to include, by any interpretation, levees or flood walls.

Section 1840, Kentucky Statutes, was enacted in 1892, Ch. 101, p. 268, Acts 1891-2-3, and while it has been amended two or three times, the language of the above quoted portion has never been altered. The levee Act was one of the 1902 session, Ch. 11, p. 32, Acts 1902.

The Act of 1902 places the power to provide for levees in the county court. The relief is granted upon petition after a judicial examination and determination. Levee commissioners are to be appointed to superintend the construction and look to the upkeep, and power is given to levy a limited tax against the property of those benefited by the erection of the levee. It is unnecessary to go into further detail.

Our expressions thus far practically obviate the necessity of any lengthy dissertation on the doctrine or rule of ejusdem generis. The rule has been universally applied with some degree of strictness, so as not to enlarge the provisions of a statute, unless it was manifest from a reading of the whole statute, or relative statutes, that it was intended to broaden powers delegated. The rule has in many instances been discussed in opinions from this court. In a recent case, Federal Chemical Co. v. Paddock, 264 Ky. 338, 94 S. W. (2d) 645, 649, the question was presented as to whether the words "any other lawful purpose," used in a statute providing for the incorporation of "Religious, Charitable and Educational" Institutions, Kentucky Statutes, Section 879, could be held to include a farm bureau, a non-profit corporation, so as to give to the latter some particular exemptions afforded the specifically named corporations. We held that the statute was not subject to such

construction under the ejusdem generis rule, and gave our interpretation of the meaning and effect of the rule:

> " 'The rule of ejusdem generis is that where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class or nature as those specifically· enumerated, unless there is a clear manifestation of a contrary purpose.' 25 R. C. L. 996. In construing statutes like unto that now under review, we have often applied this rule. See Black v. Com., 171 Ky. 280, 188 S. W. 362; Vansant v. Com., 189 Ky. 1, 224 S. W. 367; Brent v. Com., 194 Ky. 504, 240 S. W. 45; Phelps v. Com., 209 Ky. 318, 272 S. W. 743."

In addition to the cases cited supra, reference may be had to Mills v. City of Barbourville, 273 Ky. 490, 117 S. W. (2d) 187, and we may add that our interpretation is in full accord with texts on the subject, as well as opinion from other jurisdictions. 25 R. C. L. 996; Lewis' Sutherland, Statutory Construction, Vol. 2, 814; 21 A. & E. Encyc. p. 609; Hardcastle's Construction and Effect of Statute Law, 199; Endlich, Interpretation of Statutes, p. 567. See also Healy v. Toles, 266 Mich. 584, 254 N. W. 213, annotated in 92 A. L. R. 749, in which the meaning of the word "structure" or term "other structure," in use with specific words is elaborated.

We note that counsel also advances the argument that the fiscal court has the implied power to make the instant appropriation, since it may do anything and everything within reasonable bounds to protect property, and points to the recent case of Com. v. Fayette County, 239 Ky. 485, 39 S. W. (2d) 962, 964, in which we held valid an appropriation by the fiscal court for the purchase, maintenance and operation of a fire truck, and accompanying equipment. This was held valid on the ground that although not expressly authorized by statute, it appeared from the facts in the case that its procurement and use was reasonably necessary for the carrying out of *express power* and authority. We reasoned in that case that from the fact that the fiscal court was charged with the express duty to keep the county's public buildings "in repair," it followed that it had the power to do what was in reason necessary to

"preserve" the property. After citing many cases in which we had discussed the matter of implied power, we said:

> "Hence, in some of the cases cited, supra, the particular thing proposed to be done was disapproved while in others it was approved, and the conclusion in each case was arrived at because the court in determining the matter was convinced that under the conditions and in the circumstances the thing proposed to be done, and which formed the subject-matter of the legal contest, was or was not reasonably necessary for carrying out, performing, and executing the *express* power and authority conferred upon counties and their fiscal courts."

It is not claimed that the appropriation was made in furtherance of an express power vested in the fiscal court. Even were it so, we think the court would still be met with the express provisions of the levee statute, supra, and being of this mind, and further of the opinion that Section 1840, Kentucky Statutes, cannot be construed to include a levee or flood wall, we must agree with the chancellor's conclusions.

Judgment affirmed.