JUDGE ROBERTSON
delivered the opinion oe the court.
This appeal presents for our consideration constitutional questions peculiarly interesting to the parties concerned and to the local public of Louisville, and important to the whole commonwealth of Kentucky.
On the 19th of March, 1870, the chancellor of “the Louisville Chancery Court,” without notice or accusation or trial, or even motion, made an order removing the appellant from the office of commissioner of his court, which he had held for several years, and to which he had been on the 12th of August, 1868, reappointed by the chancellor himself, on the recommendation of a majority of the resident attorneys of said court, according to the 5th section of an act of 1865 concerning said court, and providing “ that upon the election and qualification of each succeeding judge of said court he shall appoint *150 a commissioner and receiver thereof for Ms said term, who shall be first recommended to him in writing, and signed by a majority of the resident practicing attorneys of said court, and none other shall be deemed qualified for said office; . . . and he shall be liable to impeachment and dismissal for misfeasance and malfeasance in office,” etc. (Myers’s Supplement, page 563.)
Holding that the commissioner held the office at the will of the chancellor, and therefore considering the removal as an executive and not a judicial act, the chancellor refused an appeal from his order of amotion; and consequently the case is before us for revision by an appeal granted in this court.
In regulating the appellate jurisdiction of this court, the legislature authorized an appeal from every final order or judgment “where the order, judgment, or decree relates to an office, franchise, or freehold.” (1 Revised Statutes, 303.) And this court has often exercised appellate jurisdiction in cases like this. (Bruce v. Fox, 1 Dana, 449; Gorham v. Luckett, 6 B. Mon. 146; Rice v. The Commonwealth, 18 B. Mon. 481; Turner v. The Commonwealth, 2 Met. 65.)
If, as we shall decide, the removal of the appellant was a judicial and final order, the revisory jurisdiction of this court is established by the foregoing and other authoritative adjudications; and consequently, as the case is regularly before us, we must consider it, and either reverse or affirm the order.
• "Whether the order be judicial or merely arbitrary and executive depends on the legal tenure of the appellant’s office, and the tenure depends on the constitutional validity of the said enactment of 1865; for antecedently to that time the office depended on the will of the chancellor.
The Louisville Chancery is a legislative court, established in the year 1835, with absolute power to appoint and remove its “master,” changed in title to “commissioner” by the Civil *151 Code. The chancellor considered that act unconstitutional; and if it be so it was void, and he had a legal right to do what he did, without the power of revision or correction by this court; but if it be valid, it elevates the office of commissioner above the chancellor’s arbitrium,, and entitles the appellant to hold for six years (the chancellor’s term) unless removed by impeachment for maladministration in office, and on this hypothesis the chancellor’s order for dismissing the appellant was void.
The chancellor seemed to think that the recognition of his court by the constitution established it as it then was, and thereby settled beyond legislative control his ancient and inherent power to appoint and remove the commissioner ad libitum,.
The constitution provides that “the Louisville Chancery Court shall exist under this constitution,” not with an immutable organization, but expressly “subject to repeal and its jurisdiction to enlargement and modijication by the General Assembly.”
The organization of the court, with all its machinery, is thus prudently secured to the legislative discretion; and no prescriptive or inherent prerogative is secured to the chancellor any more than if the constitution had not touched the court; and it is not denied that before the adoption of the constitution the legislature which created and defined its powers might abolish the tribunal, or enlarge or limit its functions, and even take from the chancellor the authority it had given to appoint or to remove a master. Its existence as a legislative court is established by the constitution; all else in organization and in function is expressly reserved to the legislature. This fundamental recognition therefore is- in no way inconsistent with the 5th section of the said act of 1865.
But the appellee’s counsel, conceding that the legislature has all legislative power not prohibited by the letter or spirit *152 of the constitution (as adjudged by this court in Griswold v. Hepburn, 2 Duvall, and other cases), insist that the 10th section of the 6th article of the constitution providing for certain legislative offices limits their tenure to four years, and constructively embraces commissioners in chancery; and also that the first section of the bill of rights prohibits the privilege of appointment by the bar.
In our judgment neither of these objections can be maintained.
After providing for most offices, the 10th section of article 6 of the constitution declares that “the General Assembly may provide for the election or appointment, for a term not exceeding four years, of such other county• or district ministerial and executive officers as shall from time to time be necessary and proper.” The immediate antecedent of this provision is the prescribed election of clerks, commonwealth’s attorneys, sheriffs, constables,' surveyors, and other ministerial officers of districts or counties. Consequently “such other county or district” officers must,-according to a general rule of interpretation, mean the like local officers — ejusdem generis — and can not include a commissioner in chancery, who, unlike those of the enumerated antecedents to which “such other” refers, is neither a district nor county officer, even though he is, in the technical sense, wholly ministerial, and only quasi judicial in reporting facts and deductions for the chancellor’s information, without power to render any judgment, which power is indispensable to the judicial function.
In framing the constitution the convention did not see fit to regulate the appointment of chancery commissioners, deeming it more fitting to leave that as it stood, subject to the control of the court as whose agents they act, and to defer to future regulation by the legislature, if its interference should for any cause ever be deemed necessary or useful. And therefore, in recognizing the existence of the Louisville Chancery *153 Court, the convention, then seeing no reason for controlling the chancellor’s existing power, made no allusion to the commissioner, and conceded to the legislature power to change the accustomed mode of his appointment and tenure of office, if any such modification, without limit, should ever become proper.
The power to make the change contemplated by the 5th section of the act of 1865 we do not doubt on any such ground as the first objection we have been considering. Nor can we doubt that the bill of rights is not in the way. The great principle of free and equal government, crystallized-by the first section, could not be consistently applied to the prescribed mode of appointing the commissioner in chancery. The constitution denounces privileged castes and forbids immunities; such, for example, as special exemption from the common burden of taxation, except when conferred on the favored beneficiaries in consideration of public services. It means some substantial benefit, not a barren power without profit or emolument of any kind. In virtually giving to the bar instead of the bench the selection of the commissioner in whose competency and fidelity they and their clients are peculiarly interested, the legislature has imposed a burden without emolument; and by imposing the responsibility on them has relieved the chancellor from an unprofitable and sometimes vexatious task, and taken out of his way the temptation of nepotism and every sort of favoritism. And had the clerk been substituted for the bar, we would presume that he would not have considered the privilege of any value to him; nor could the power of appointment by him, any more than by the chancellor, be adjudged incompatible with the bill of rights; and the constitutionality of that exclusive and uncontrollable privilege monopolized so long by the chancellor was never doubted. Consequently the delegation of the same privilege to the bar should be equally free from question or doubt.
*154 "Without unnecessary elaboration, we feel impelled to the conclusion that the chancellor had no jurisdiction over the office of commissioner, but only a supervisory power over his conduct; and that, as an inevitable corollary, the order removing the appellant from office, and consequently the appointment of Robert Cochran as his successor when there was no legal vacancy, are void.
Wherefore each of those orders is set aside and annulled, and the cause remanded with instructions to allow the appellant to perform the duties and enjoy the privileges of the office of commissioner without disturbance by Robert Cochran.