# Taylor, Drainage Com'r, v. Fidelity & Casualty Co. of New York, Inc., et al.

(Decided Dec. 16, 1932.)

BARNES & SMITH and T. F. BIRKHEAD and W. G. NEWTON for appellant.

LOUIS IGLEHEART and CARY, MILLER & KIRK, and ALEXANDER & THOMAS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Mrs. Jeannie Q. Franklin was the county treasurer of McLean county and executed bond with the Fidelity & Casualty Company of New York as her surety for the faithful discharge of her duties. As county treasurer she was ex officio treasurer of the several drainage districts of the county, and as such treasurer she received drainage funds derived from taxes against lands in the respective districts in the county, aggregating $24,511.49, on April 6, 1926, which she deposited in the bank of Calhoun on a general deposit. The bank closed on May 7, 1926, and only paid the depositors 25 per cent. of the amount due them, leaving a net loss of the drainage funds amounting to $19,727.37, to recover which the drainage commissioner brought this action against the treasurer and her surety. The fiscal court of the county had entered an order designating the bank of Calhoun and five other banks in the county as "the depositories in which the funds of the county are to be kept." The drainage commissioner had entered an order on his book designating the bank of Calhoun as "the depository for the funds of the said drainage commission and the treasurer of this board is directed to deposit all funds for said board in the bank of Calhoun." The trial court dismissed the petition, and to reverse that judgment plaintiff prosecutes this appeal.

The order of dismissal was made after the court had overruled demurrers filed to the answers as a whole and to each paragraph thereof, and upon plaintiff declining to plead further. While the answers are subdivided into more than two paragraphs, they actually, in

600

substance, relied only on two defenses which were: (a) That defendant deposited the funds sued for in the bank of Calhoun when it was solvent and in doing so she acted in good faith and could not thereafter, by the exercise of ordinary diligence, discover its insolvency before it ceased business and closed its doors, and (b) that, in so depositing the funds, she acted upon the order of the drainage commissioner in designating that bank as the depository of the fund. The question is: Whether either of those defenses were and are available? The court answered it in the affirmative, but in doing so we are convinced that it was error.

(a) The statute making the county treasurer ex officio treasurer of the drainage fund (section 2380-48) says: "In all cases where a county treasurer shall become treasurer of a drainage district, he shall be liable upon his general bond as county treasurer to the extent of any funds of such district entrusted to him." Whatever may be the correct rule in cases not affected by such an enactment, it is patent to our minds that the excerpts from the statute makes the county treasurer in his capacity of ex officio treasurer of a drainage district organized under that act, a guarantor of the forthcoming of the funds upon proper demand, unless, perhaps, he would be excused under defense (b) supra, and to which we will now address ourselves.

That defense, (b), is sought to be sustained under the principles announced in the case of Edwards v. Logan County, 244 Ky. 296, 50 S. W. (2d) 83; but the facts of this case are wholly dissimilar from those in that one, in which Edwards, as the treasurer of Logan county, and his sureties in his bond were exonerated from liability therein sought to be enforced by the county, and which was the amount of the deposit of *county* funds made by Edwards as such county treasurer in a bank that had been designated by the fiscal court as a depository of county funds. The exoneration therein relied on and upheld was bottomed solely upon the ground that the applicable statutes referred to therein (and which are sections 928, 929, and 1840 of our present Kentucky Statutes) conferred authority on the fiscal court to designate a depository of *county* funds, and that, when done by the fiscal court, followed by its directions for the treasurer to make the deposit in the designated depository, the treasurer and his sureties would be exonerated from liability for the loss

of the fund, unless other facts appeared creating negligence on their part, notwithstanding such designation and direction. In other words, that case held: (1) That fiscal courts of counties, under the applicable statutes, supra, possessed the authority to designate depositories for county funds and the authority to direct the county treasurer to deposit the funds of the county in such depositories, and (2) when done by the treasurer he would be prima facie relieved of liability. to account for the funds on failure of the depository, and the burden then would be cast upon the county, in seeking to fasten liability upon him, to allege and prove a situation that would have that effect.

We have in this state two statutes relating to the ditching and draining of wet lands, each of which has been held by this court to be entirely distinct and independent acts. See Board of Drainage Commissioners v. Lang, 187 Ky. 123, 218 S. W. 736. The first of those statutes was enacted in 1912, being chapter 132, p. 483 of the session acts of that year, and, as amended in 1918 (chapter 114), it is now section 2380-1 to and including section 2380-50 of the 1930 Edition of Carroll's Kentucky Statutes, and will be referred to in this opinion as the "first act." The other statute relating to the same subject was enacted in 1918 and is chapter 64, p. 191, of the session acts of that year, and it is now section 2380b-1 to and including 2380b-61 of the same edition of the statutes, and it will be referred to herein as the "second act."

Drainage districts were organized in McLean county under the first act and they have continuously been operated under that act as amended, one of the latter of which was reducing the commissioners provided for therein in the original act from a membership of three to only one, which position was at the time of the filing of this action filled by appellant, O. D. Taylor. There is nothing in either of the drainage statutes supra, nor in any statute relating to the duties of fiscal courts, giving the latter any authority, control, or management whatever over drainage district funds, since they form no part of the revenue of a county. Therefore, the excusing grounds, upheld and applied in the Edwards Case as applicable to *county* funds, cannot be invoked in this case, wherein like effect is sought to be given as relief against liability for the loss of the funds of a drainage district, and which proposition requires

no argument to demonstrate. In order, therefore, for the doctrine of that case to apply to this one it becomes necessary to ascertain whether the drainage commissioner of McLean county, who holds his position under the first act, possessed any authority to either designate a depository of the funds of the district, or to direct or require its ex officio treasurer (the county treasurer) to deposit such funds in that depository; for, unless such authority is given the drainage commissioner he would have no right to exercise such supervisory jurisdiction, and, if he attempted to do so, the treasurer in complying therewith would do so at his peril.

Preliminary to inquiring into that question it should be kept in mind that an officer or board of a governmental division of the state has no authority by virtue of their position, and independently of a statute, to designate a depository of funds of the particular agency. It is purely a statutory authority, as will be seen from the text in 18 C. J. 582, sec. 49, wherein it is said: "The officer or board vested with the power to designate depositories is determined by the applicatory statutory provisions," which "may be mandatory or merely permissive." See, also, the text in section 45, p. 580. It should furthermore be remembered that such subordinate agencies "possess only such powers as are expressly conferred upon them by the Constitution or statutes of the sovereignty of which they form a part, and such as are necessarily implied or incident to those expressly granted and which are indispensable to enable the municipality to carry out its declared objects, purposes, and express powers." Board of Education v. Scott, 189 Ky. 225, 224 S. W. 680, 681.

We now turn our attention to the first act and find nothing in it from beginning to end, either expressly or impliedly, conferring upon the drainage commissioners therein provided for (but now reduced to only one, and referred to as the county drainage commissioner) authority to designate depositories for drainage funds, and, under the cases and authorities cited, we are forced to the conclusion that the order made in this case by the county commissioner, designating the bank of Calhoun as the depository of the funds of the district, was ultra vires, without authority and void. The opinion in the Edwards Case supra, fortifies that conclusion, since it is clearly manifested therein that, unless statu-

tory authority had been found for the designation of a depository by the fiscal court for county funds, its order, therein relied on, would also have been null and void.

Fortifying our conclusion that the first act vests no power and authority in the drainage commissioner, therein provided for, to designate a depository of the funds of the district, we have but to turn to the second act. Its section 31 (section 2380b-31 of the 1930 Edition of our statutes) contains this language: "Said treasurer shall keep all funds received by him from any source whatever deposited at all times in some bank, banks or trust company to be designated by the board of drainage commissioners." At the same session of the Legislature at which that act (the second one) was passed, the first one was amended in many particulars by chapter 114, p. 502 (Acts 1918); and that amendment to the first act, though enacted at the same session that also enacted the second act, made no provision whereby the commissioner or commissioners under the first act might designate a depository of the funds of the district, and from which the conclusion is inescapable that it was the intention of the Legislature to confer such authority on the commissioner under the second act, but to withhold it from him under the first one.

Such effect under like circumstances was so declared by the Court of Appeals of the State of Missouri in the case of State v. Wilson, 151 Mo. App. 723, 132 S. W. 625, 626, in this language: "If the Legislature intended, as claimed by the respondents, to give the right under the general welfare clause of a city of the fourth class to select a city depository for all the city funds, why did it enact the special section above mentioned, giving to the city the right to select a depository for its sinking funds? Each city above mentioned had a general welfare clause in its charter previous to the enactment of the special sections relating to city depositories, and if it was the intention of the Legislature, under the general welfare clause, to give to cities the right to select city depositories, then all the special statutes relating thereto were unnecessary; and it will not be presumed that the Legislature intended to do a useless and unnecessary thing."

That principle of the law as applicable to the construction of statutes has not only received judicial sanc-

tion, but it is both logical and essential in order to carry out the evident intention of the Legislature, which is the supreme duty of courts in construing statutes. Applying that rule to the facts of this case it is at once seen that the sole ground supporting the Edwards opinion is entirely wanting in this case, and, that being true, that opinion is no authority for relieving defendant and her surety from responsibility for the deposit sued for in this case.

The conclusion might appear to be harsh, but courts are not responsible for conditions brought about by statutory enactments. Their duty ceases when the task of construction is performed and when it is found that the statute transgresses no inhibition of the Constitution. Neither are courts authorized to inject into a statute a provision, or part of another independent one, upon the theory that there is no substantial reason for its omission from the statute under consideration, since they are not authorized to amend a statute to conform to what may be concluded as a better reason for its enactment, nor to supply a reason when the Legislature enacting it has not done so. So construing the law we are forced to the conclusion that the court erred in overruling the demurrers filed to the answers and to each paragraph thereof.

Wherefore, the judgment is reversed, with directions to set it aside and to sustain the demurrers filed by plaintiff to the answers and to each paragraph thereof, and for proceedings consistent with this opinion.