# Supreme Court of Kentucky

2005-SC-000965-DG

WORKFORCE DEVELOPMENT                                        APPELLANT
CABINET, DEPARTMENT FOR
EMPLOYMENT SERVICES,
DIVISION OF UNEMPLOYMENT
INSURANCE

ON REVIEW FROM COURT OF APPEALS
V.                CASE NO. 2004-CA-001146-MR
FRANKLIN CIRCUIT COURT NO. 02-CI-01523

MARY C. GAINES                                              APPELLEE

**OPINION OF THE COURT BY JUSTICE SCHRODER**

**<u>AFFIRMING</u>**

The Kentucky Whistleblower Act protects public employees who report perceived misconduct to certain state entities, or to "any other appropriate body or authority." The issue in this case is whether "any other appropriate body or authority" includes the whistleblower's own agency. We hold that it does.

Since 1972, and until her recent retirement, Appellee Mary C. Gaines worked for the Appellant, the Jefferson County office of the Division of Unemployment Insurance, Department for Employment Services, Kentucky Workforce Development Cabinet (Cabinet). Despite her advancement from office assistant to auditor, Gaines stated that she had difficulty in a

department dominated by men: she was paid less than men and asked to do menial tasks.

These issues resulted in Gaines filing a gender discrimination and retaliation suit against the Cabinet in 1998, which she and the Cabinet eventually settled. According to Gaines, after her gender discrimination suit, her work environment deteriorated. According to the Cabinet, in February of 2002, the Cabinet informed Gaines that some auditors would be transferred from the downtown Louisville office to the Preston Highway office. Ralph Hunt, Gaines's supervisor, informed her in the summer of 2002 that she would be transferred. The Preston Highway office is generally known as the "penal colony," and many auditors view being transferred there as punishment. Gaines expressed her objection to the transfer. In November 2002, Gaines filed a second lawsuit against the Cabinet claiming gender discrimination and retaliation as a result of her deteriorating work environment.

According to Gaines, on February 6, 2003, she witnessed Hunt and Pete Sears, an employee from Covington, throwing away confidential and proprietary information into a publicly accessible dumpster. The information came from the offices of Howard Founder, John Murphy, Pat Zoll, and Shirley Lyle. Gaines stated that, due to the confidential nature of many documents in her Division, standard procedure was to use "burn boxes" to send documents to Frankfort to be shredded and destroyed. Therefore, throwing documents into a dumpster attracted Gaines's attention. In addition, both Founder and Lyle were retirees involved in litigation against the Cabinet. Gaines believed that

2

the purged documents were confidential and had bearing on pending gender discrimination litigation.

Gaines contacted her attorney, J. Keith Smith, and asked him to report the document purge. On Thursday, February 6 (the same day Gaines witnessed the purging of the documents), Smith contacted Cabinet attorney Greg Higgins, who contacted Department for Employment Services Commissioner James F. Thompson. Thompson conducted an investigation, but concluded that there was no wrongdoing.

On Monday, February 10, two working days later, Gaines received notice that she was being transferred to the Preston Highway office. Gaines stated that four managers collectively presented her with a letter from Commissioner Thompson, informing Gaines of the move. Gaines also stated that Hunt barred her from the downtown office and took away her keys and security card. On March 5, 2003, Gaines amended her complaint to include a whistleblower claim under KRS 61.102. Gaines argued that she was transferred to the Preston Highway office as retaliation for reporting the document purge.

The Franklin Circuit Court granted summary judgment to the Cabinet on Gaines's whistleblower claim and her gender discrimination claim. A jury found for the Cabinet on the retaliation claim. Gaines appealed from the circuit court's grant of summary judgment on the whistleblower claim, and the Court of Appeals reversed. The Court of Appeals concluded that the Cabinet was not entitled to a judgment as a matter of law, because an internal report to the Cabinet qualifies as a report to "any other appropriate body or authority"

under KRS 61.102 (the Kentucky Whistleblower Act). This appeal by the Cabinet followed, and this Court granted discretionary review.

The Kentucky Whistleblower Act, codified at KRS 61.101 et seq., provides as follows:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, **or any other appropriate body or authority**, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. **No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence.**

KRS 61.102(1) (emphasis added). This case is purely a matter of statutory interpretation; statutory interpretation is a question of law, and this Court reviews it de novo. Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mut. Ins. Co., 250 S.W.3d 321, 325 (Ky. 2008).

We begin with several general principles of statutory interpretation. In Kentucky, statutes are to be "liberally construed with a view to promote their objects and carry out the intent of the legislature ...." KRS 446.080(1). In addition, words and phrases are to "be construed according to the common

4

and approved usage of language" unless a word has a certain technical meaning. KRS 446.080(4). Finally, statutes which are remedial in nature should be liberally construed in favor of their remedial purpose. Kentucky Ins. Guar. Ass'n. v. Jeffers ex rel. Jeffers, 13 S.W.3d 606, 611 (Ky. 2000).

The Whistleblower Act's purpose "is to protect employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information." [1] Davidson v. Commonwealth, Dep't of Military Affairs, 152 S.W.3d 247, 255 (Ky.App. 2004) (quoting Meuwissen v. Dep't of Interior, 234 F.3d 9, 13 (Fed. Cir. 2000)). The Act has a remedial purpose in protecting public employees who disclose wrongdoing. It serves to discourage wrongdoing in government, and to protect those who make it public. The purpose of the Whistleblower Act is clear, and it must be liberally construed to serve that purpose.

KRS 61.102(1) specifically lists a number of bodies and agencies to whom employees may make a protected disclosure, but also protects disclosures to "any other appropriate body or authority." The Cabinet argues that all entities listed in the statute are "third party entities with investigatory authority for wrongdoing by public agencies." Therefore, the Cabinet argues, "any other appropriate body or authority" should be limited to entities of this type. However, the entities specifically listed in KRS 61.102(1) are not so narrow.

---

[1] Then-Judge (now Chief Justice) Minton concluded that the Kentucky Whistleblower Act is so similar to the federal Whistleblower Protection Act (WPA) that we can look to federal precedent for guidance. Davidson, 152 S.W.3d at 255. The Davidson court therefore looked to Meuwissen's conclusions about the WPA. Id.

For example, the statute specifically protects disclosures to any member or employee of the judiciary or the General Assembly. But not every employee possesses investigatory authority. In the case of the judiciary, it would be inappropriate for a member or employee to take any action at all beyond passing along the information to the proper authority. The list of entities in KRS 61.102(1) is not limited to those with investigatory authority. Instead, the list encompasses those who may have authority to remedy or report perceived misconduct in a particular situation.[2]

We believe that "any other appropriate body or authority" should be read to include any public body or authority with the power to remedy or report the perceived misconduct. This interpretation serves the goals of liberally construing the Whistleblower Act in favor of its remedial purpose, and of giving words their plain meaning. Generally, the most obvious public body with the power to remedy perceived misconduct is the employee's own agency (or the larger department or cabinet).

When a court construes statutory provisions, it must presume "that the legislature did not intend an absurd result." Commonwealth, Cent. State Hosp. v. Gray, 880 S.W.2d 557 (Ky. 1994); see also Renaker v. Commonwealth, 889 S.W.2d 819, 820 (Ky.App. 1994), Williams v. Commonwealth, 829 S.W.2d 942, 944 (Ky.App. 1992). The Cabinet's interpretation of the Whistleblower Act, however, would lead to just such an absurd result.

---

[2] The inclusion of "any other appropriate body or authority" lends additional support to this interpretation. The plain meaning of *appropriate* is "[s]uitable for a particular person, condition, occasion, or place; fitting." American Heritage Dictionary (4th ed. 2000).

6

The Whistleblower Act actually contemplates internal disclosures when it states that "[n]o employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence." KRS 61.102(1). The Cabinet's argument suggests that, while an employer cannot force an employee to first make an internal report, the employer is free to fire that employee if she chooses to do so. It should be plainly obvious why this is an absurd result.

The Cabinet would have this Court reward an employee who makes a report to an "appropriate" outside entity, but punish the employee who reports internally. External reporting of wrongdoing is certainly valuable. However, minor wrongdoing can often be addressed internally. It would be absurd to punish an employee for reporting through the proper channels prior to making a report to the legislature, the judiciary, or law enforcement.

An internal report is often the logical first step, and in many cases may be the only step necessary to remedy the situation. It seems absurd for a low-level state employee to make a report directly to the Attorney General or Legislative Resource Commission, or to law enforcement or a regulatory body. In the case of minor misconduct, law enforcement or a regulatory body may be without power to remedy the situation.

For example, as Appellee suggests in her brief, it would be absurd for a state mechanic to report misuse of state vehicles directly to the General Assembly, the Attorney General, or others named in KRS 61.102(1). And in such a situation, state or federal law enforcement would have no reason to intervene. Someone within the same agency is the most logical place to begin.

7

Even in the case of more serious misconduct or outright violation of the law, employees may wish to first make an internal report.

The Cabinet warns that our interpretation of the Whistleblower Act could result in public employees using "an internal complaint relating to inefficient paper recycling, excessive use of paper clips, or impoliteness by a supervisor" to insulate themselves from any sort of discipline. However, the Whistleblower Act requires that an employee must make the report or disclosure in good faith. Davidson, 152 S.W.3d at 251. The "savvy public employee" the Cabinet warns us about would not be making his or her report in good faith.

Finally, the Cabinet argues that the Court of Appeals erred by not considering, as an alternative grounds for upholding the summary judgment, Gaines's failure to establish a causal connection between her reporting the document purge and her transfer to Preston Highway. The Cabinet points to the fact that Gaines had known for some time that she was to be transferred to Preston Highway.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56.03. The moving party must show that "the adverse party could not prevail under any circumstances." Steelvest, Inc. v. Scansteel Service Center, Inc., 807 S.W.2d 476, 480 (Ky. 1991).

Here, Gaines alleged that she was transferred two working days after she reported the document purge. She also alleged that four managers collectively presented her with a letter informing her of her transfer, and that she was told

8

not to return to the downtown office unless summoned. The evidence in this case presents a genuine issue of material fact as to whether there was a causal connection between Gaines's report and her transfer. This case also presents a genuine issue of material fact as to the ultimate issue: whether Gaines was retaliated against as a result of her report. These are questions for a jury.

Under the Kentucky Whistleblower Act, a public employee makes a report to an "appropriate body or authority" whenever she makes her report to a public entity with the power to remedy or report the perceived misconduct. Gaines made her report to her own Division, which certainly had the power to remedy the situation. Therefore, it cannot be said that the Cabinet is entitled to a judgment as a matter of law.

For the foregoing reasons, the judgment of the Court of Appeals is hereby affirmed. The partial summary judgment in favor of the Cabinet on the whistleblower claim is vacated and remanded to the Franklin Circuit Court for proceedings consistent with this opinion

Cunningham, Scott, and Venters, JJ., concur. Special Justice David T. Royse dissents by separate opinion in which C.J. Minton, and Special Justice Stewart E. Conner joins. Abramson and Noble, JJ., not sitting.

9

COUNSEL FOR APPELLANT:

Stewart Christopher Burch
Logan & Gaines, PLLC
114 West Clinton St.
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

David O'Brien Suetholz
Segal, Lindsay & Janes PLLC
515 Park Ave.
Louisville, KY 40208

Herbert Lee Segal
Segal, Lindsay & Janes PLLC
515 Park Ave.
Louisville, KY 40208

# Supreme Court of Kentucky

2005-SC-000965-DG

WORKFORCE DEVELOPMENT
CABINET, DEPARTMENT FOR
EMPLOYMENT SERVICES,
DIVISION OF UNEMPLOYMENT
INSURANCE                                                    APPELLANT


                          ON REVIEW FROM COURT OF APPEALS
V.                              CASE NO. 2004-CA-001146-MR
                      FRANKLIN CIRCUIT COURT NO. 02-CI-01523


MARY C. GAINES                                               APPELLEE


## DISSENT BY SPECIAL JUSTICE ROYSE


Respectfully, I dissent. I would reverse the decision of the Court of Appeals because Ms. Gaines failed to satisfy the express statutory prerequisites for initiating an action under KRS 61.102, and thus, the Franklin Circuit Court acted properly in granting summary judgment against her on this statutory cause of action. I believe the interpretation of KRS 61.102 is straightforward under well-established principles of statutory construction.

The basic question before this Court is: Did Ms. Gaines provide the required notice under KRS 61.102, considering that her report of alleged wrongdoing was made through her counsel to counsel for the Cabinet for whom she worked and against whom she was complaining. Neither the Cabinet nor

its General Counsel is among the agencies and individuals enumerated in KRS 61.102(1). Thus, the only inquiry for this Court is whether the Cabinet, through its General Counsel, qualifies as "... any other appropriate body or authority ..." as set forth in the statute. We must determine this question by employing Kentucky canons of statutory construction to arrive at an objective interpretation of the statute that accurately reflects the General Assembly's actual intent. As Justice Cooper explained in Travelers Indem. Co. v. Reker, 100 S.W.3d 756 (Ky. 2003):

> [T]he applicable rule of construction with respect to matters not expressed in a statute is that a court must refer to the words used in enacting the statute rather than surmising what may have been intended but was not expressed. . .. Where a statute is intelligible on its face, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus*, or cure an omission.

Id. at 765 (internal citations and quotations omitted).

Kentucky's courts, until today, have abided by the long-standing doctrine of *ejusdem generis*. As explained by this Court, *ejusdem generis* "is used as a tool of construction when a general word or phrase follows a list of specific persons or things. The general word or phrase will be interpreted to include only persons or things of the same type of those listed." Com. v. Plowman, 86 S.W.3d 47, 50 (Ky. 2002). "Where specific items or classes are followed by more general language, the general words should be restricted by the specific designations so that they encompass only items of the same class or those specifically stated." Rainey v. Mills, 733 S.W.2d 756, 758 (Ky. App. 1987).

2

Although absent from the Majority Opinion, this canon of construction was apparently still alive and well in Kentucky just two years ago, as demonstrated in the case of Garcia v. Com., 185 S.W.3d 658 (Ky. 2006). In that case, now-Justice Schroder and now-Chief Justice Minton joined with Judge Taylor in relying on the doctrine of *ejusdem generis* to determine whether a cracked windshield constituted a nuisance under KRS 189.020. That statute provides:

> Every vehicle when on a highway shall be so equipped as to make a minimum of noise, smoke or other nuisance, to protect the rights of other traffic, and to promote the public safety.

In Garcia, a police officer found ten (10) bricks of marijuana as a result of a traffic stop purportedly for a cracked windshield, which the officer believed was a violation of KRS 189.020. The three-judge panel of the Court of Appeals concluded that the trial court should have suppressed the ten (10) bricks of marijuana from evidence because the traffic stop violated the Fourth Amendment inasmuch as a cracked windshield is not a violation of KRS 189.020. Judges Schroder, Minton and Taylor relied extensively on the doctrine of *ejusdem generis* to conclude that the statutory phrase "other nuisance" could only be interpreted to include those nuisances of a kind similar to noise and smoke, and that a cracked windshield did not qualify (unless it was so severely cracked as to constitute a driving hazard, which the court concluded was not the case). Id. at 664-65.

> *To effectuate legislative intent,* we believe 'other nuisance' should be interpreted as including only those nuisances of a similar kind as noise and smoke. Accordingly, we do not interpret the term

3

'other nuisance' in KRS 189.020 as encompassing a cracked windshield.

Id. at 664 (emphasis added).[1]

In the case at hand, we see that KRS 61.102(1) expressly enumerates seven agencies or classes of individuals to whom a report can be made: (1) the Kentucky Legislative Ethics Commission, (2) the Attorney General, (3) the Auditor of Public Accounts, (4) the General Assembly of the Commonwealth of Kentucky or any of its members or employees, (5) the Legislative Research Commission or any of its committees, members or employees, (6) the judiciary or any member or employee of the judiciary, and (7) any law enforcement agency or its employees. Each of these agencies or classes of individuals is viewed as having investigatory and/or adjudicatory authority within the Commonwealth. Applying the principle of *ejusdem generis*, it cannot be reasonably concluded that an in-house lawyer for the Workforce Development Cabinet, the very agency where Ms. Gaines worked, is of the same class or nature as the individuals and entities enumerated in the statute.

---

[1] The last two centuries of Kentucky jurisprudence unequivocally demonstrate that the doctrine of *ejusdem generis* is, and has always been, a fundamental canon of statutory construction in this Commonwealth. See e.g., Fiscal Court of Jefferson County. v. Brady, 885 S.W.2d 681, 685 (Ky. 1994) (in which Justice Leibson explains and applies *ejusdem generis* as a "primary rule of statutory construction", and refers the reader to Bloemer v. Turner, 137 S.W.2d 387 (Ky. 1940) and Jefferson County Fiscal Court v. Jefferson County, 128 S.W.2d 230 (Ky. 1939)); Robinson v. Ehrler, 691 S.W.2d 200, 204 (Ky. 1985) ("The rule of *ejusdem generis* applies. Such words are general words, not to be construed in their widest extent, but to be held as applying only to things of the same general kind or class as those specifically mentioned."); Barren River State Boat Dock, Inc. v. K & R Mfg. Co., 167 S.W.3d 676 (Ky.App. 2005); Smith v. Cochran, 7 Bush 147, 70 Ky. 147 (Ky. 1870).

4

To construe the phrase "any other appropriate body or authority" in the manner adopted by the Majority not only fails to adhere to the concept of *ejusdem generis*, but it wholly negates the specific enumerations that the General Assembly did choose to include. If the only requirement is that a report be made to "an appropriate body or authority," as the Majority suggests, then the General Assembly's enumeration of seven acceptable classes of individuals and agencies is, for all practical purposes, rendered meaningless. "The presumption is that the Legislature intends an Act to be effective as an entirety. No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that significance and effect shall, if possible, be accorded to every part of the Act." George v. Scent, 346 S.W.2d 784, 789 (Ky. 1961). "It is elementary that a statute should be construed, if possible, so that no part of it is meaningless or ineffectual." Brooks v. Meyers, 279 S.W.2d 764 (Ky. 1955).

The Majority has today decided that a public employee satisfies the prerequisites for KRS 61.102 if she makes a report to her employer, regardless of who that employer may be or whether the employer is enumerated in KRS 61.102. An employer is *ipso facto* an "appropriate body or authority." In reality, the Court has added an eighth enumerated category to the list: "the individual's employer." Notably, in KRS 61.101(2), the General Assembly specifically undertook to define the word "Employer" for purposes of KRS 61.102 and 61.103. Yet nowhere in KRS 61.102(1) does that term appear as an acceptable body whom to report. Likewise, in KRS 61.102(2), the General

5

Assembly gave protection to those who aid an employee who "makes public" any wrongdoing set forth in KRS 61.102(1). This certainly evinces a legislative intent to require some manner of external report to trigger the statutory whistleblower protections.[2]

It is important to remember that the cause of action under which Ms. Gaines sought relief is one created out of whole cloth by the General Assembly. It does not find its origin in the common law nor does it have any underpinnings in jural rights. Thus, we must respect the fact that if the General Assembly undertakes to create a legislative cause of action it certainly retains the authority, within constitutional bounds, to prescribe the elements, limitations and/or prerequisites for one who seeks to pursue such an action. See Com., Revenue Cabinet v. Gossum, 887 S.W.2d 329 (Ky. 1994) ("It is to be recognized that a right to a refund of illegally or improperly collected taxes does not derive from the common law, but is a matter of legislative grace. It follows that if appellees are to be successful in this action, they must bring themselves within the terms of the statute authorizing a refund.") Moreover, KRS 61.101(2) is not the only statutory protection the General Assembly has provided for public employees. Other protections are afforded, for instance, under the state personnel procedures in KRS Chapter 18A and the Kentucky Civil Rights Act, KRS Chapter 344.

---

[2] The Majority attempts to support its conclusion with the provision in KRS 61.102(1) that "no employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence." This provision actually contradicts the Majority's interpretation. The obvious intent of this provision is to make clear that an employee need *not* give internal notice prior to making a report to one of the statutorily enumerated individuals or entities.

The Majority points out that the subject statute is "remedial," and therefore, must be "liberally construed." While this is true, simply because a statute is remedial in nature does not mean that it carries with it transcending powers that trump well-accepted canons of construction or firmly established principles of separation of powers. "While liberal construction is proper to effect a beneficent purpose, a statute should not be construed so as to give it a meaning which the language of the statute does not fairly and reasonably support as it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there." Com. v. Garnett, 8 S.W.3d 573, 576 (Ky. App. 1999) (internal citations and quotations omitted).

Respectfully, the Majority's interpretation of the statute grafts additional language onto the statute which the General Assembly did not undertake to do. "Our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." Beckham v. Board of Educ. Of Jefferson County, 873 S.W.2d 575, 577 (Ky. 1994); see also, City of Covington v. Kenton County, 149 S.W.3d 358, 362 (Ky. 2004). "[I]t is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there." Com. v. Gaitherwright, 70 S.W.3d 411, 413 (Ky. 2002).

The fundamental premise for today's decision is that "statutes are to be liberally construed with a view to promote their objects and carry out the intent of the legislature." As this Court noted in Bob Hook Chevrolet Isuzu, Inc. v.

7

<u>Com.</u>, 983 S.W.2d 488 (Ky. 1999), however, "[a] corresponding rule of construction is that a statute should be construed, if possible, so that no part of its provisions are rendered meaningless." The interpretation of the phrase "or any other appropriate body or authority" reached today by the Majority, engulfs the entire statute and renders the fifty-seven (57) words immediately preceding that phrase mere surplusage.

While the Majority persuasively articulates various reasons why it might be *better* to allow internal reporting to one's employer as a sufficient prerequisite, our task is not to make such policy determinations, but instead, to determine what the legislature actually *intended*, gleaning this intent from the four corners of the unambiguous statutory language the legislature chose to employ. <u>Gathright v. H.M. Byllesby & Co.</u>, 154 Ky. 106, 157 S.W. 45, (1913) ("Courts are interpreters and not makers of the law; it is not the province of the courts to usurp the functions of the Legislature...."); <u>Chapman v. Chapman</u>, 498 S.W.2d 134, 137 (Ky. 1973) ("[I]t is for this court to interpret the law, not to enact legislation.") Thoughtful policymakers could certainly have a lively debate about the wisdom of the Kentucky General Assembly in its choice of enumerated agencies and individuals to whom reports may be made. By way of example, many states extend protection to internal disclosures,[3] some states

---

[3] Alaska, AS § 39.90.100-.150; Colorado, C.R.S.A. §§ 24-50.5-101-107; Illinois, I.L.C.S. 174/1-174/35; Louisiana, LSA-R.S.23:967; Minnesota, M.S.A. § 181.932; Missouri, V.A.M.S. § 105.055; Montana, MCA § 39-2-901-915; Nevada, N.R.S. §§ 281.611-.671; North Carolina, N.C.G.S.A. §§ 126-84-88; Pennsylvania, 43 P.S. §§ 1421-1428; South Carolina, SC ST §§ 8-27-10-50; West Virginia, W. Va. Code §§ 6c-1-1-8; and Wisconsin, W.S.A. §§ 230.80-.90.

require an internal disclosure prior to an external disclosure,[4] and Congress

has seen fit to treat whistleblowing requirements differently under different

legislative acts.[5] In each of these instances, the *legislative* body has applied its

*legislative* judgment to declare the circumstances under which it will allow a

private cause of action for whistleblowing. The point is that these debates

must be left to thoughtful policymakers, not judges, no matter how thoughtful

they may be.

---

[4] Indiana, IC § 4-15-10-4, IC § 22-5-3-3; Maine, 26 M.R.S.A. §§ 831-840; New Hampshire, N.H. Rev. Stat. §§ 275-E:1-E:2; Ohio, R.C. §§ 4113.51 – 4113.53.

[5] The Whistleblower Protection Act protects "any disclosure" without regard to whom that disclosure is made. 5 U.S.C. § 2302(b)(8). Sarbanes-Oxley protects certain private sector employees only when they provide specific categories of information to "a Federal regulatory or law enforcement agency; any Member of Congress or any committee of Congress; or a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A (a)(1). Other federal statutes do not address the person to whom disclosures should be made, but rather protect disclosures only in the context of specific proceedings. See, e.g., 29 U.S.C. § 1140 (protecting employees who have "given information" or "testified" in an ERISA "inquiry or proceeding"; 33 U.S.C. § 1367 (protecting employees who "filed, instituted, or caused to be filed or instituted any proceeding" under the Clean Water Act).

The case of <u>Davidson v. Com., Dept. of Military Affairs</u>, 152 S.W.3d 247 (Ky. App. 2004) is inapposite. The <u>Davidson</u> Court quoted an earlier opinion in acknowledging that the Kentucky statute is similar in *almost* every respect to the federal whisteblower statute, and thus, it was acceptable to look to federal precedent for *guidance*. <u>Id.</u> at 255. Importantly, the context in which the Court reviewed these authorities was with regard to whether a report of publicly known information is a protected disclosure. On *that* issue, both the Kentucky statute and the federal statute were silent, and thus, it was appropriate to consider federal precedent. Notably, the <u>Davidson</u> Court specifically analyzed whether the report was made to a proper party under the express language of the Kentucky statute. <u>Id.</u> at 253-54. Obviously, the <u>Davidson</u> Court did not believe the Kentucky statute was similar in *this* respect, because no such analysis is required under the federal statute which protects "any disclosure," without limitation as to whom the disclosure is made.

[A] conclusion might appear to be harsh, but courts are not responsible for conditions brought about by statutory enactments. Their duty ceases when the task of construction is performed and when it is found that the statute transgresses no inhibition of the Constitution. Neither are courts authorized to inject into a statute a provision, or part of another independent one, upon the theory that there is no substantial reason for its omission from the statute under consideration, since they are not authorized to amend a statute to conform to what may be concluded as a better reason for its enactment, nor to supply a reason when the Legislature enacting it has not done so.

Taylor v. Fidelity & Casualty Co. of New York, 246 Ky. 598, 55 S.W.2d 410, 413 (1932).

The Majority justifies its interpretation in this case so as not to allow the infamous "absurd result." Without more, however, this same justification could be used to reach a more desirable *legislative* result in any case of statutory interpretation – without regard for canons of construction or separation of powers. A logically absurd, clearly unintended result, however, is something quite different than a result which is simply contrary to what we might believe is good policy or better procedure. The Judiciary is not charged with interpreting statutes so as to improve upon inartfully worded or even ill-conceived statutes.

Under the Kentucky Constitution, the General Assembly is left to its own devices to pass bad laws, or badly drafted ones; so long as it does not pass unconstitutional ones. Manning v. Sims, 308 Ky. 587, 213 S.W.2d 577, 580 (1948) ("Another rule that is uniformly invoked in statutory construction is that the propriety, wisdom and expediency of legislation is exclusively a legislative question."); Mondie v. Com., 158 S.W.3d 203, 209 (Ky. 2005) ("It is the province

10

of this Court under the constitution to decide what the law is and not to declare what it should be. If the statute "is unwise or impolitic, the remedy rests with the Legislature; not with the courts."). Absent some fatal flaw such as unconstitutional ambiguity or vagueness – neither of which are even alleged here – it is the Judiciary's solemn duty to hold that line and to do so with unwavering discipline and restraint. Ky. Const. § 27; Vaughn v. Knopf, 895 S.W.2d 566, 568 (Ky. 1995) ("[I]t has been our view, in interpreting Section[s] 27 and 28, that the separation of powers is fundamental ... and must be 'strictly construed.'")

While a minor entreat into legislative draftsmanship may seem wholly justified and appropriate in a given case, we must keep in mind that the separation of powers is just as important for the Judiciary's autonomy as it is for the other two branches of government, lest we be the ones to blur the very line that protects our own authority. As Justice Keller wrote for a unanimous Supreme Court in Elk Horn Coal Corp. v. Cheyenne Resources, Inc., 163 S.W.3d 408, 422 (Ky. 2005):

> Because of the judiciary's unique position as the final unchecked arbiter of constitutional disputes, we should be particularly vigilant to restrain our own exercise of power. It is important that the powers of the Legislature should not stand or fall according as they appealed to the approval of the judiciary; else one branch of government, and that the most representative of the people, would be destroyed, or at least completely subverted to the judges. (Internal quotations and citations omitted.)

An equally eloquent pronouncement of this important principle was articulated by Justice Scott in his vigorous dissent in Stephenson v. Woodward, 182 S.W.3d 162 (Ky. 2006) (Scott, J. Dissenting):

11

[E]ach of our three branches of government were intentionally hampered in some areas, so that they would all remain equal; so no one branch, could ever become greater than the others, could ever garner enough power, to overcome the greatest part of government – the people. This government, or structure, they built, consists of 264 parts, or sections (the Constitution), and when you change one of these sections, you change the whole structure. Maybe just a little today, but that change will grow in time and then someday, you will find, to your dismay, that the whole structure has changed.

Id. at 211.

Because I believe the Franklin Circuit Court properly granted summary judgment by applying the plain language of KRS 61.102, I would reverse the Court of Appeals. For this reason, I would not reach the Cabinet's alternate argument that it was entitled to summary judgment because Ms. Gaines could not demonstrate a factual issue on retaliation inasmuch as the decision to transfer her allegedly *preceded* her whistleblowing. More importantly, it does not appear the Circuit Court was even presented with, much less decided, a motion for summary judgment on that issue. The Court of Appeals certainly did not address such a ruling. Thus, I agree with Ms. Gaines that this question is not properly before this Court.

For the foregoing reasons, I respectfully dissent.

Minton, CJ. and Special Justice Stewart E. Connor join this dissent.

12