RENDERED: MAY 16, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0431-MR

SAMANTHA RICKETTS                                 APPELLANT

v.                 APPEAL FROM JEFFERSON CIRCUIT COURT
                HONORABLE TRACY E. DAVIS, JUDGE
                ACTION NO. 24-CI-001107

LOUISVILLE METRO
GOVERNMENT                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES, JUDGES.

CALDWELL, JUDGE: Samantha Ricketts ("Ricketts") appeals from the dismissal of her whistleblowing action for failure to state a cause of action. We affirm.

## FACTS

According to the sole count of Ricketts' verified complaint, Louisville Metro Government ("LMG") allegedly violated the Kentucky Whistleblower Act

by terminating her employment as a graphics specialist after Ricketts reported actual or suspected violations of LMG's Ethics Code to an appropriate authority.

Ricketts' complaint alleged Mayor Craig Greenberg's wife, Rachel Greenberg ("Rachel") ordered Ricketts to do tasks outside her job description as set forth in an attached 19-page timeline "made a part hereof by reference." Ricketts also alleged she believed Rachel's actions violated the LMG Ethics Code and reported her concerns to LMG Director of Communications Matt Erwin ("Erwin"), who told her he would relay her concerns to the mayor's office. She further alleged her employment was terminated as indicated in her timeline describing alleged events from December 2022 until October 2023.

Ricketts also stated in her complaint that on December 14, 2023, Mayor Greenberg had filed a motion to dismiss an ethics complaint against him. Though not noted in Ricketts' complaint, this ethics complaint was not filed by Ricketts but by another LMG employee – Malcomb Haming. (Mayor Greenberg's motion to dismiss Haming's ethics complaint was attached to Ricketts' complaint.) Ricketts pointed out in her complaint that Mayor Greenberg signed the motion to dismiss this ethics complaint under oath.

Ricketts' complaint quoted statements from the motion to dismiss the ethics complaint in which the mayor admitted that Rachel volunteered and interacted with mayor's office staff yet denied that Rachel made any substantive

decisions. Ricketts' complaint alleged these quoted statements were false, Rachel made substantive decisions, and Rachel directly gave instructions to Ricketts.

Ricketts' attached 19-page timeline describes Ricketts' interactions with various individuals including Rachel, Erwin, and Ricketts' direct supervisor, Kevin Trager. The timeline recounts Rachel frequently giving Ricketts orders and being present at meetings with Ricketts and other individuals. The timeline also sets forth various other alleged events – some of which do not relate to Ricketts' interactions with Rachel or Ricketts' reporting concerns about these interactions.

According to the timeline, Ricketts reported her concerns about Rachel's actions to communications director Erwin at a mid-June 2023 meeting after another employee complained about Rachel's asking her to handle Rachel's social media in addition to the mayor's. In the timeline attached to her complaint, Ricketts recounted discussing:

> how Rachel Greenberg and others are coming to me
> directly to order me to do work for them and then voice
> their disbelief when I tell them of my full workload,
> when they should be going through my supervisor first,
> who will then be able to assess my workload and make
> the request of me officially.

According to the timeline, Erwin responded by stating he would relay "upstairs" (meaning to the office where Rachel and the mayor's senior staff work) "that all work requests for our team must go through him first."

Next, the timeline describes other events that summer including Erwin's resignation in mid-August, which Ricketts describes as abrupt and for unclear reasons. Ricketts stated she believed Erwin was "pushed out" due to "going to bat" for her and others.

A September 2023 timeline entry notes the recent publication of a newspaper article about Rachel's involvement in mayor's office affairs based on the statements of two anonymous sources and that Ricketts began receiving "the silent treatment" shortly thereafter. According to other timeline entries, Ricketts informed her direct supervisor and others that she was not one of the anonymous sources for the article. The timeline next reflects that on September 11, 2023, Ricketts was told at a meeting that the communications department is being restructured and that her graphics specialist position is being eliminated.

The timeline also recounts that Ricketts received a letter from human resources in early October 2023, informing her that her position was being eliminated. Ricketts worked her last day at LMG that October 13th and was offered another position at the same salary that same day. According to the timeline, Ricketts was told she had to decide whether to take the offer that same day and she opted not to take the offer.

LMG filed a motion to dismiss Ricketts' complaint for failure to state a claim. Ricketts filed a response and LMG filed a reply to her response.

After the matter was submitted, the trial court entered a written order granting the motion to dismiss. The trial court noted it must accept the allegations of Ricketts' complaint and timeline as true in ruling on the motion to dismiss for failure to state a claim.

The trial court held Ricketts failed to state a whistleblowing claim because Ricketts did not allege she had disclosed an actual or suspected ethics violation to appropriate authority. The trial court noted Ricketts never filed an ethics complaint regarding her interactions with Rachel and Haming's ethics complaint is not a disclosure by Ricketts. The trial court also noted the employment action (Ricketts' termination) occurred before the filing of the complaint – so the employment action could not have been motivated by the filing of the complaint. Also, in a footnote in its order, the trial court characterized Ricketts' timeline allegations as "personal complaints over job-related activities and disagreements with management" and not descriptions of "actual or suspected mismanagement, waste, fraud, abuse of authority" or violation of law. The trial court also stated its agreement with LMG's argument that dismissal was mandated by precedent cited by LMG.

Ricketts filed a timely appeal. Further facts will be discussed as needed in our analysis.

## ANALYSIS

### Standard of Review

In ruling upon a motion to dismiss for failure to state a claim upon which relief can be granted, *see* CR[1] 12.02(f), the trial court must accept as true all allegations in the complaint and liberally construe pleadings in the light most favorable to the plaintiff. Moreover, the trial court cannot properly grant the motion to dismiss for failure to state a claim unless the plaintiff "would not be entitled to relief under any set of facts which could be proved[.]" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks omitted).

Since the trial court does not make any factual findings in resolving a motion to dismiss for failure to state a claim but rather resolves pure questions of law, we review its ruling *de novo* – meaning without deference. *Id.*

### Elements of a Whistleblower Action and Rules of Construction

"KRS [2] 61.102(1) sets forth the essential elements of a whistleblower violation[.]" *Harper v. University of Louisville*, 559 S.W.3d 796, 801 (Ky. 2018).

KRS 61.102(1) provides in pertinent part:

No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent,

---

[1] Kentucky Rules of Civil Procedure.

[2] Kentucky Revised Statutes.

interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the Executive Branch Ethics Commission, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

The Kentucky Whistleblower Act must be liberally construed to serve its remedial purpose of protecting employees who report governmental wrongdoing which is concealed and/or not publicly known. *Harper*, 559 S.W.3d at 801.

Nonetheless, some limitations on what constitutes protected whistleblowing activity are set forth in precedent:

First, the "disclosure" of information which is public information or otherwise already widely known within the organization cannot qualify as a whistleblower disclosure. The statute protects the whistleblower who exposes information not generally known. *Moss v. Kentucky State University*, 465 S.W.3d 457 (Ky. App. 2014).

Second, complaints by an employee directly to her supervisor concerning the supervisor's own wrongful conduct generally cannot qualify as a whistleblower disclosure. *Pennyrile Allied Community Services, Inc. v. Rogers*, 459 S.W.3d 339, 345 (Ky. 2015).

Third, the disclosure must be made to one of the specific qualifying authorities identified within the statute, or to "any other appropriate body or authority." "The list of entities in KRS 61.102(1) is not limited to those with investigatory authority. Instead, the list encompasses those who may have authority to remedy or report perceived misconduct in a particular situation." *Gaines*,[3] 276 S.W.3d at 793. "[A]ny other appropriate body or authority" means

> any public body or authority with the power to remedy or report the perceived misconduct. This interpretation serves the goals of liberally construing the Whistleblower Act in favor of its remedial purpose, and of giving words their plain meaning. Generally, the most obvious public body with the power to remedy perceived misconduct is the employee's own agency (or the larger department or cabinet).

*Id.*

Finally, the nature of the information disclosed cannot simply be an expression of a policy disagreement based upon the whistleblower's subjective opinion; it must objectively meet the criteria for the kinds of misconduct described in the KWA, such as actual or suspected conduct that violates a law or administrative regulation or conduct that objectively viewed constitutes waste or fraud.

---

[3] *Workforce Development Cabinet v. Gaines*, 276 S.W.3d 789 (Ky. 2008).

-8-

*Harper*, 559 S.W.3d at 802-03.

## Summary of Parties' Main Arguments

Ricketts contends the trial court erred in granting the motion to dismiss, citing *Harper*, 559 S.W.3d 796. She asserts in her brief that Mayor Greenberg's sworn statement in the motion to dismiss Haming's ethics complaint that Rachel made no substantive decisions "establishes beyond cavil that Appellant's complaint was not about public information already known." She also points out that her "complaints regarding Mayor Greenberg's ethical violations" were not made to her supervisor about the supervisor's own conduct. And she contends that her expressing her concerns about Rachel's orders to then-LMG Director of Communications Erwin constituted a disclosure to "any other appropriate body or authority."

In response, LMG argues in its brief that the trial court properly dismissed the complaint for failure to state a claim because Ricketts did not allege disclosing non-public information to Erwin. It asserts that unlike *Harper*, in which reports of suspected wrongdoing (wasteful spending) were held to be protected disclosures because spending details were not well known, *id.* at 809, the conduct at issue reported by Ricketts was well-known. It points out Ricketts' timeline recounts Rachel's many interactions with Ricketts and other employees and argues this indicates Rachel's involvement was not concealed but widely known. It also

notes Rachel's name and contact information appear on the mayor's office contact list (also attached to Ricketts' complaint).

In sum, citing, *e.g.*, *Harper*, 559 S.W.3d at 803 and *Moss v. Kentucky State University*, 465 S.W.3d at 460, LMG argues that Ricketts did not allege she revealed that Rachel was secretly working behind the scenes in violation of the ethics code. Moreover, LMG characterizes Ricketts' report to Erwin as a complaint that Rachel should not be allowed to give her assignments so Ricketts could better manage her workload and as simply stating Ricketts' disagreement with workplace policy.

LMG notes that Ricketts' appellant brief relies solely on *Harper*, 559 S.W.3d 796 and does not "challenge the cases cited by Appellee [LMG] in its briefing below and relied upon by the trial court in dismissing her claims." LMG apparently refers to the trial court's statement near the end of its order of dismissal that it agreed with LMG's arguments that dismissal was mandated pursuant to authority cited by LMG: including *Harper*, 559 S.W.3d 796; and *Moss*, 465 S.W.3d 457.

Lastly, LMG argues the trial court did not err in rejecting Ricketts' reliance on the ethics complaint filed by Haming since this is not a disclosure by Ricketts. Ricketts did not respond to LMG's appellee brief arguments as she did not file a reply brief.

**Ricketts Failed to Allege a Qualifying Disclosure**

Having reviewed the parties' arguments, the main dispute appears to be whether a qualifying disclosure was alleged.[4] We agree with the trial court and LMG that Haming's ethics complaint was not a disclosure by Ricketts. (We also note the lack of any explicit allegation that Ricketts was retaliated against for supporting Haming in his filing the ethics complaint, *see* KRS 61.102(2), or that Ricketts played any role in Haming's filing his ethics complaint.)

One main point of contention is whether the information Ricketts reported to Erwin was widely known. While Ricketts asserts Mayor Greenberg's statement that Rachel made no substantive decisions is false and demonstrates the secrecy of Rachel's actions, this statement – made in the motion to dismiss a third party's ethics complaint – does not directly address whether Rachel engaged in the alleged, specific conduct directed at Ricketts.

Nonetheless, treating the allegations of Ricketts' whistleblowing action complaint as true and generously construing pleadings in Ricketts' favor, Ricketts has alleged conduct (Rachel's giving Ricketts orders) which may not be publicly known or widely known beyond a few people at the same organization. *See Harper*, 559 S.W.3d at 802 (citing *Moss*, 465 S.W.3d 457) ("[T]he 'disclosure'

---

[4] LMG's appellee brief does not challenge Ricketts' assertion that her disclosure to Erwin was made to an appropriate authority who could take action to report or address the perceived misconduct. *See* KRS 61.102(1); *Harper*, 559 S.W.3d at 802-03; *Gaines*, 276 S.W.3d at 793.

-11-

of information which is public information or otherwise already widely known within the organization cannot qualify as a whistleblower disclosure.").

Assuming Ricketts alleged a disclosure of information which is not "public information or otherwise already widely known within the organization," however, Ricketts' complaint must still allege a qualifying disclosure of an actual or suspected violation of the law or other misconduct specified in KRS 61.102(1)[5] to state a whistleblowing claim. *See generally Harper*, 559 S.W.3d at 801-03.

Ricketts has consistently argued to the trial court and to this Court that the alleged conduct at issue violates LMG's ethics code. However, Ricketts has not cited any specific ethics provision or identified the basic nature of the ethical violation (such as nepotism or a conflict of interest). Nor would it be proper for us to conduct research to identify an applicable ethics provision or to make new

---

[5] In addition to prohibiting retaliation against employees for otherwise qualified disclosures of information relating to "actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance," KRS 61.102(1) similarly prohibits retaliation for disclosure to appropriate authority of non-widely known information relating to "actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety."

However, Ricketts did not challenge the trial court's construing Ricketts' alleged report to Erwin as not an alleged report of "actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety" (Record ("R.") p. 106) in her appellant brief. Instead, from her complaint through her appellant brief, Ricketts has simply argued that the alleged conduct reported to Erwin violated LMG's ethics code.

Moreover, we cannot raise arguments for reversal which have not been raised by Ricketts herself. *See Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) ("It is not our function as an appellate court to research and construct a party's legal arguments[.]").

arguments on Ricketts' behalf.  *See Hadley*, 186 S.W.3d at 759 (appellate courts should not conduct legal research or make arguments on behalf of appellants).

In sum, without an identifiable ethics provision prohibiting the alleged conduct, Ricketts' telling Erwin of Rachel's giving Ricketts orders without going through Ricketts' supervisor is not a protected whistleblowing disclosure of an actual or suspected violation of the law.  Thus, we discern no error in the trial court's dismissal of the action for failure to state a claim.

Further arguments raised in the parties' briefs have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Thomas E. Clay                          Mitchel T. Denham
Louisville, Kentucky                    Cindy L. Effinger
                                        Kristen A. Johnson
                                        Louisville, Kentucky